**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Isa AKINSOLA, Defendant–Appellant.**

No. 96–2680.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 1996.

Decided Jan. 16, 1997.

Barry Rand Elden, Chief of Appeals, Charles Ex (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

John M. Cutrone (argued), James J. Cutrone, Chicago, IL, for Defendant–Appellant.

Before COFFEY, FLAUM, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Isa Akinsola, a native of Nigeria, was arrested in 1985 and charged in federal court in Illinois with possession of heroin with intent to distribute and conspiracy to possess heroin with intent to distribute. He pled not guilty to the charges and was released on an unsecured appearance bond. When his trial date approached, Akinsola took a powder and disappeared for more than a decade. In 1996, however, he made the mistake of applying for permanent resident alien status under a false name in Atlanta, Georgia. A fingerprint check revealed his true identity—and the existence of an outstanding bench warrant for his arrest in Chicago. Akinsola was returned to Illinois where he eventually pled guilty to both charges pursuant to a written plea agreement. He was sentenced to a term of 72 months (his brief on appeal says 5 years, but we think it was 6) on each count concurrent. Because his offense of conviction was committed prior to the effective date of the federal sentencing guidelines, Akinsola actually caught a break because he is eligible for parole and the sentence he received is a bit less than what he would have got for the same offenses under the guidelines where no parole is available.

On this appeal, Akinsola challenges the adequacy of the guilty plea proceeding in the district court. Specifically, in his own words, his argument is:

Defendant was not advised by the district court that he had a constitutional right not to incriminate himself and that by pleading guilty, he was incriminating himself and thereby waiving that right. The defendant did not expressly and therefore validly waive that right. Nor was the defendant told, as required by Rule 11 that he had the right to enter or persist in a plea of not guilty. The district court also failed, as required by Rule 11, to ask the defendant whether any promises had been made to him, apart from the plea agreement, in order to induce him to plead guilty.

■ Guilty pleas are to the criminal justice system what motor oil is to automobiles; you can't run one without the other. And guilty pleas are in abundance because the overwhelming majority of defendants (around 90 percent) resolve their cases without trials. To illustrate the point, on the day this case was argued (December 17, 1996) the appeals of nine other defendants (in seven separate cases) were heard, and all except one had been convicted on a plea of guilty. So it is of vital importance to the system of criminal justice that guilty pleas not be light-

ly set aside on fanciful arguments that exalt form over substance, which is exactly what we would do today if we were inclined to see this case Mr. Akinsola's way.

The preferred method of getting out from under a plea of guilty is to ask the trial court for relief. *See* Rule 32(e) of the Federal Rules of Criminal Procedure. And a motion to withdraw a guilty plea, even if denied, is nevertheless helpful on appeal because the trial court will have made a record which we can, in turn, review. There is no record here as Akinsola did not seek relief in the district court. He came, instead, straight to our door where, because he bypassed the district judge, we apply a plain error review to the case. *United States v. Cross,* 57 F.3d 588, 590 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 406, 133 L.Ed.2d 324 (1995). From our review of the record, no plain error can be found.

The font of a lot of law on guilty pleas is the Supreme Court's decision in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Akinsola cites it four times and relies on it with gusto. *Boykin,* of course, is truly a landmark case, but in this day of elaborate guilty plea proceedings—what with detailed plea agreements and all—it is interesting to recall the facts the Supreme Court considered in the case. Mr. Boykin was indicted in state court on five counts of robbing grocery stores in Mobile, Alabama, offenses that were punishable by death. An attorney was appointed for him, and three days later, at his arraignment, Boykin pleaded guilty to all three charges. The judge who took the plea didn't ask Boykin any questions, and Boykin did not address the judge. Of course, no plea agreement—either written or oral—was in evidence. Subsequently, Boykin was sentenced to death.

Not surprisingly, the Supreme Court concluded that it could not presume from a silent record that a guilty plea was "voluntarily and understandingly entered." A proceeding consistent with the federal regime under Rule 11 of the Federal Rules of Criminal Procedure was suggested. We have come a long way since the Supreme Court decided *Boykin* in 1969. Compare the facts

in *Boykin* to what happened here and the difference is night and day.

Akinsola, with his attorney, James Cutrone, entered into an elaborate written plea agreement with the government. The plea agreement touched every base, many more than once. In the written plea agreement, Akinsola acknowledged his full understanding of the nature and elements of the crimes charged, and that he was pleading guilty "because he is in fact guilty of the charges" as they are detailed in the agreement. The agreement goes on to describe in excruciating detail the rental, by Mr. Akinsola, of various post office boxes in Chicago and his receipt on numerous occasions of packages mailed from India containing various amounts of heroin. The detailing of the heroin activity alone is spread over four pages. Akinsola verifies that he understands the facts as alleged and the maximum penalties which are specified in the agreement.

The plea agreement notes that if Akinsola persisted in a plea of not guilty he would have the right to a jury trial, the mechanics of which, including such things as the exercise of preemptory challenges, are explained in detail. He is told that the jurors must unanimously agree that the evidence proves guilt beyond a reasonable doubt before a verdict of guilty can be returned. The plea agreement discusses his right to confront and cross-examine witnesses against him through his attorney and his right to present evidence and witnesses on his own behalf. It explains Akinsola's privilege against self-incrimination, and it specifies that if he decides not to testify during his trial the jury will be told that no inference of guilt may be drawn from his decision not to take the stand. The plea agreement then says that Akinsola "understands that by pleading guilty he is waiving all the rights" explained in the agreement and his "attorney has explained those rights to him and the consequences of his waiver of those rights." Next, the plea agreement sets out the sentencing procedure that will be used in the case and specifies that Akinsola acknowledges that "no threats, promises, or [non-plea agreement] representations have been made to cause [Akinsola] to plead guilty." Finally, it specifies that Akinsola

"acknowledges that he has read the agreement and carefully reviewed each provision with his attorney ... and that he further acknowledges that he understands and voluntarily accepts each and every term and condition of the agreement." The agreement is signed, of course, by Akinsola and Attorney Cutrone.

When the guilty plea was taken in court, District Judge Grady engaged Mr. Akinsola in a colloquy that *substantially* covered all aspects of Rule 11. Yet Akinsola, relying on *United States v. Fels*, 599 F.2d 142 (7th Cir.1979), argues that Judge Grady's plea colloquy wasn't perfect and that "non-compliance with a single provision of Rule 11 requires that the defendant be allowed to plead anew." This misstatement of law fails to take note of the harmless error review of guilty plea proceedings we discussed in *Cross* (a case Akinsola does not cite) and the addition of subsection (h) to Rule 11 in 1983 which says, "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

We have carefully reviewed the transcript of Akinsola's guilty plea proceeding, and we find that it substantially complied with Rule 11 and that any conceivable shortcomings were less than harmless error. But beyond that, we think it is important to note that when an elaborate written plea agreement is present in a case where a defendant is represented by counsel, our review of the proceedings will include a look at that agreement itself as well as the judge's Rule 11 colloquy. Only if both are considered can the totality of the circumstances regarding the voluntariness of the plea be ascertained. And here, the totality of the circumstances unmistakably points to the fact that Akinsola's plea was knowingly and voluntarily entered. Simply said, we will not pick nits when reviewing the adequacy of guilty pleas. To prevail on a claim of this sort, a defendant will need substantially more ammunition than Akinsola has brought to this battle. Substantial compliance with Rule 11 is what is required, and we clearly have that here. Ac-

cordingly, the judgment of the district court is AFFIRMED.