**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles E. HAYNES, Defendant–
Appellant.**

**No. 97–2997.**

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1998.

Decided May 13, 1998.

Stephen P. Sinnott (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Glenn C. Reynolds (argued), Madison, WI, for Defendant–Appellant.

Before COFFEY, EASTERBROOK, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Nelson Flores–Pedroso was playing dominoes after lunch in the cafeteria of the federal prison in Oxford, Wisconsin, when Charles Haynes emerged from the kitchen and poured scalding oil on his head. Severely burned over 18% of his body, Flores–Pedroso is disfigured for life. Haynes pleaded guilty to assault, in violation of 18 U.S.C. § 113(a)(6), and was sentenced to 33 months' imprisonment (consecutive to the 10–year term he was serving for a drug offense). The guilty plea reserved the right to argue on appeal that the district judge erred in foreclosing Haynes from arguing to the jury that the attack was justified as a measure of self-defense. See Fed.R.Crim.P. 11(a)(2).[†]

Self-defense? How can a sneak attack be self-defense? Haynes made an offer of proof that Flores–Pedroso was a bully who had a reputation for coercing smaller inmates (such as Haynes) to provide favors of all kinds— food, commissary items, and sex. About a month before the incident in the cafeteria,

---

[†] Because the parties agreed to this use of a conditional plea under Rule 11(a)(2), we need not decide whether it would have been better for the district court to have insisted on either a trial (at which a more complete record would have been developed) or an unconditional plea. Moreover, because Haynes does not contend that he sought to keep his defense a secret until after the prosecution presented its case, we need not decide whether a defendant may be compelled to litigate before trial the legal status or factual sufficiency of a potential defense.

Flores–Pedroso began pressuring Haynes to use Haynes' position as a food preparer in the kitchen to do favors for him. Haynes refused, and in response Flores–Pedroso threatened to make Haynes his "bitch" (homosexual plaything). For the next month staredowns and jostling occurred, while Flores–Pedroso kept up a stream of threats. One time Flores–Pedroso cornered Haynes in a bathroom, and Haynes thought that rape was imminent, but another inmate entered and Flores–Pedroso left. A day before Haynes poured the oil, Flores–Pedroso picked up Haynes and slammed him to the ground within sight of a guard, who did nothing. On the day of the oil incident, Flores–Pedroso told Haynes that as soon as food service was closed for the afternoon he would "finish what he started". Haynes contends that he believed that he would be attacked as soon as he left the cafeteria, and that he struck first in order to protect himself.

Under the law of the jungle a good offense may be the best defense. But although prisons are nasty places, they are not jungles— and it is the law of the United States rather than Hobbes' state of nature that regulates inmates' conduct. Haynes concedes that he never reported Flores–Pedroso to the guards or sought protection—protection a prison is constitutionally obliged to provide. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Haynes asserted in his offer of proof:

He could not go to "the police"—a term used to describe the guards. If the guards elected to take him out of population, he would be forced to stay in administrative segregation which meant twenty-four hour per day lock-up. If his protective custody status resulted in a transfer, all the inmates of the receiving institution would know that he was in protective custody, for being victimized by another inmate and by being a "snitch," which would result in further victimization and perhaps invite an assault by not just one inmate, but several. If Haynes went to the guards and they did not believe him and left him in population, things would only get worse. He would certainly be attacked, not only by [Flores–]Pedroso, but by others who labeled him a "snitch." Haynes did not be-

lieve he could go to the guards and help himself in any appreciable way.

In other words, Haynes did not fancy the prospect of administrative segregation, feared the consequences of appearing to be an informer, and decided that it was better to take matters into his own hands. What his claim of self-defense comes down to is the proposition that an inmate is entitled to attack and maim a prison bully even if there is ample time to report the threats and obtain protection from the guards. The district court ruled that Haynes would not be allowed to argue self-defense or inform the jury about Flores–Pedroso's threats. The evidence and line of defense Haynes wanted to pursue, as the district court saw things, was just a request for jury nullification—a plea to jurors to let the Davids of federal prisons smite the Goliaths, to give the predators a taste of their own medicine, without legal consequences. The judge ruled that an inmate must use available, lawful options to avoid violence, even if they find those options unpalatable. Haynes asks us to hold that the existence of lawful alternatives is irrelevant to a claim of self-defense.

■ All doubts about the role of lawful alternatives to one side, it is hard to see how Haynes' offer of proof conforms to the normal understanding of self-defense: a use of force necessary to defend against an imminent use of unlawful force. See *Model Penal Code* § 3.04(1) (1962) (extensive authority collected in the comment following the blackletter); 1 *Federal Criminal Jury Instructions of the Seventh Circuit* § 4.01 (1980). Haynes was not faced with an imminent use of force by Flores–Pedroso. There was a threat of action later that afternoon, but Flores–Pedroso had made unfulfilled threats before, and anyway "later" and "imminent" are opposites. A judge may, and generally should, block the introduction of evidence supporting a proposed defense unless all of its elements can be established. *United States v. Bailey*, 444 U.S. 394, 415–17, 100 S.Ct. 624, 637–38, 62 L.Ed.2d 575 (1980); *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988). But we need not dwell on timing, because we agree with the district judge's reason: absence of lawful alternatives is an element of

all lesser-evil defenses, of which self-defense is one. See *United States v. Talbott*, 78 F.3d 1183, 1187–88 (7th Cir.1996); *United States v. Elder*, 16 F.3d 733, 738–39 (7th Cir.1994).

*Bailey* establishes this point. Four men who escaped from a federal prison argued that their acts were justified by duress. They offered to establish that they feared injury if they remained—not simply because there were ruffians among the inmates, but because they had actually been beaten up; and, according to the four escapees, the guards were among the aggressors. 444 U.S. at 398–99, 100 S.Ct. at 628–29. The Court held that "whatever defenses of duress or necessity are available ... [,] one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense will fail." *Id.* at 410, 100 S.Ct. at 634, quoting from Wayne R. LaFave & Austin W. Scott, *Handbook on Criminal Law* 379 (1972). The prisoners in *Bailey* had options other than escaping and remaining at large; even the option of escape followed by immediate surrender to the FBI was enough to foreclose a duress defense. Haynes asks us not to extend the approach of *Bailey* to claims of self-defense, but we have already taken that step (see *Elder*), if step it is. For *Bailey* is not about duress so much as it is about the set of lesser-evil defenses that includes duress, necessity, and self-defense. See also *Model Penal Code* § 3.02 (collecting these defenses under the rubric "choice of evils"). Each rests on the belief that a person facing harm is justified in performing an act, otherwise illegal, less injurious than the impending loss. *Talbott* groups these defenses and explains that the choice among them does not matter for purposes of *Bailey*'s approach. 78 F.3d at 1186 & n. 2. Accord, *United States v. Perez*, 86 F.3d 735 (7th Cir.1996); *United States v. Gometz*, 879 F.2d 256 (7th Cir.1989). Differences in nomenclature have more to do with the source of the threat than with the nature of the justification. For example, "duress" is the name used when A credibly threatens to hit B unless B hits C (or destroys C's property); B responds that the damage done to C is justified because it is less than the injury B himself would have received had he not complied. When A is inanimate (a flood, for example), the defense takes the name "necessity." When A threatens B, and B hits A, the defense receives the name "self-defense." When A threatens C, and B hits A, the name is "defense of another." But in all of these cases, the defense fails if the use of force was unjustified. This is the idea behind the "imminence" requirement (if the threat is not imminent, a retreat or similar step avoids injury) as well as the requirement that the object of the threat prefer a lawful response to an unlawful one.

Prisons collect violent persons who have little respect for the law, which makes them hard to control without the use of devices such as segregation that are unpleasant in their own right. If prisoners could decide for themselves when to seek protection from the guards and when to settle matters by violence, prisons would be impossible to regulate. The guards might as well throw the inmates together, withdraw to the perimeter, and let them kill one another, after the fashion of *Escape From New York*. Perhaps Haynes was hoping that a jury would have this view of the right way to manage prisons. But it is not the view reflected in the United States Code or the United States Constitution. A prisoner who requests protection from the guards without success (or who lacks time to do so) may defend himself with force proportioned to the threat. But Haynes, who listened to Flores–Pedroso's menaces for a month without seeking help, had no conceivable justification for a preemptive strike. The district judge correctly barred Haynes from making his proposed defense.

AFFIRMED.