**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marcos SALGADO–OCAMPO,**
**Defendant–Appellant.**

No. 98–1217.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1998.

Decided Nov. 2, 1998.

As Amended Nov. 4, 1998.

Stephen A. Ingraham (argued), Thomas P. Schneider, Office of the U.S. Atty., Milwaukee, WI, for Plaintiff–Appellee.

Richard L. Zaffiro (argued), Wauwatosa, WI, for Defendant–Appellant.

Before FLAUM, MANION and EVANS, Circuit Judges.

**324**

FLAUM, Circuit Judge.

Marcos Salgado–Ocampo was indicted on one count each of illegal re-entry into the United States after a previous deportation, violating 8 U.S.C. § 1326(a)[1] ("count one") and being an illegal alien in possession of a firearm, violating 18 U.S.C. § 922(g)(5) ("count two").[2] Judge Curran sentenced Salgado–Ocampo to concurrent prison terms of twenty-four months on count one, and thirty-eight months on count two. The defendant appeals, alleging that the district court improperly denied his motion to withdraw his guilty plea on count two, and that the court erred in not grouping the offenses for sentencing purposes under the United States Sentencing Guidelines. We affirm the district court's judgment on both issues.

## FACTS

In early 1997, the defendant lived in Milwaukee, Wisconsin. He is a Mexican citizen who was previously deported from the United States in 1996 for being an undocumented immigrant. Sometime between April 30, 1996 and late 1996, he illegally re-entered the United States.

On January 17, 1997, the defendant had an altercation with a co-tenant in his wife's home. According to Salgado–Ocampo, his wife's co-tenant and her boyfriend were engaged in sexual activities which were clearly audible to his young children, so he told the boyfriend to leave. Shortly thereafter, the boyfriend and another individual telephoned Salgado–Ocampo and told him they were going to come back to the house and shoot him. The defendant then called a neighbor and borrowed a .380 caliber semiautomatic pistol. Under 18 U.S.C. § 922(g)(5), it is unlawful for an illegal alien to possess a firearm. When the two men came back to Salgado–Ocampo's building some time later, the de-

fendant brandished the borrowed pistol in a successful effort to scare them away. After a neighbor called the police, Salgado–Ocampo was arrested. While in custody, he admitted to being an illegal alien.

On June 10, 1997, Salgado–Ocampo was indicted on the two charges noted above, and on August 28, 1997 he pled guilty to both. The record reflects that Judge Curran examined the defendant in open court in a Rule 11 hearing, and found that the defendant knowingly and willingly pled guilty after consultation with his attorney. At this Rule 11 hearing, Salgado–Ocampo's attorney noted for the record that he had discussed the facts of the case with his client, and that in the attorney's opinion, they did not provide the defendant with a justification defense.

On January 14, 1998, one day prior to the sentencing hearing date, Salgado–Ocampo filed a notice of intent to withdraw his guilty plea, and his counsel made a formal motion to withdraw as counsel. The counsel's motion was granted. At the January 15 sentencing hearing, Salgado–Ocampo read into the record (through an interpreter) a *pro se* Rule 32(e) motion to withdraw his guilty plea based on double jeopardy grounds and that the .380 pistol had not traveled in interstate commerce. Judge Curran found the motion groundless, denied it and sentenced the defendant.

## ANALYSIS

### I.

 Federal Rule of Criminal Procedure 32(e) permits a defendant to withdraw a guilty plea on a showing of "any fair and just reason." *United States v. Schilling*, 142 F.3d 388, 398 (7th Cir.1998).[3] However, this does not grant a defendant absolute freedom to withdraw a guilty plea. *United States v.*

---

1. "[A]ny alien who has been ... deported ... and thereafter enters, attempts to enter, or is at any time found in the United States unless prior to his reembarkation at a place outside the United States ... the Attorney General has expressly consented to such alien's reapplying for admission ... shall be guilty of a felony."

2. "[I]t shall be unlawful for any person ... who, being an alien, is illegally or unlawfully in the United States ... to ship or transport in inter-

state or foreign commerce, or possess in or affecting commerce, any firearm or ammunition."

3. *Schilling* and other cases mistakenly cite to Rule 32(d). Until recently, Rule 32(d) dealt with plea bargains, but that is no longer the case. Rule 32(e), which replaced Rule 32(d) as part of the 1994 amendments, now governs withdrawal of guilty pleas. *See* FED. CRIM. CODE AND RULES at 130 (West 1998). *See also United States v. Standiford*, 148 F.3d 864, 868 (7th Cir.1998).

# 325

*Caban*, 962 F.2d 646, 649 (7th Cir.1992). When, as here, a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was given freely and knowingly, "he faces an uphill battle in persuading the judge that his purported reason ... is 'fair and just.'" *Schilling*, 142 F.3d at 398, citing *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir.1995). The determination as to whether "fair and just" reasons exist will be upheld unless it is clearly erroneous. *Schilling*, 142 F.3d at 398. The ultimate decision concerning the defendant's right to withdraw his plea will be disturbed only upon a showing of abuse of discretion. *Lee v. United States*, 113 F.3d 73, 76 (7th Cir.1997).

### A.

Salgado–Ocampo does not maintain that the district court erred in denying his motion on the grounds he proffered in his January 14 *pro se* Rule 32(e) motion. Instead, he argues that the district court erred in refusing to grant his motion because he could have maintained a justification defense to the illegal possession of a firearm charge. The defendant contends that this defense provides him with the requisite "fair and just" reason to withdraw his plea.

Although the government notes that Salgado–Ocampo never raised this argument in his *pro se* Rule 32(e) motion, he discussed the facts constituting the now-claimed justification defense at his Rule 11 hearing. At that hearing, the defendant told the court: "it's true I pulled a gun. But I no do it to kill somebody. The reason I pulled the gun is because ... he [his neighbor's boyfriend] said he gonna shoot me .... My intention is only to get [him] away from the house and tell him to leave." After hearing his client relay these facts, Salgado–Ocampo's attorney stated for the record that he did not believe they constituted a justification defense. Subsequent to his attorney's withdrawal, the defendant filed his *pro se* Rule 32(e) motion to withdraw his guilty plea.

The government argues that Salgado–Ocampo's failure to raise the justification defense in his Rule 32(e) motion constitutes

total forfeiture of that argument. This is inconsistent with our jurisprudence, however.[4] Even if the defendant raised the issue for the first time on appeal, it would not be foreclosed. We have previously held that where a defendant completely bypasses the district court and first raises his Rule 32(e) motion in this Court, we treat his claim as waived rather than forfeited, and review it for plain error. *United States v. Akinsola*, 105 F.3d 331, 333 (7th Cir.1997). Moreover, in this case, the facts which putatively support a justification defense appear in the record. *Cf. United States v. Gray*, 611 F.2d 194, 197 (7th Cir.1979) (holding that defendant forfeits review of issues not presented to district court where there is no factual basis for the claim in record before district court).

Salgado–Ocampo contends that by raising the issue at his Rule 11 hearing, he preserved it for appeal under our normal standard of review. He suggests that *United States v. Groll*, 992 F.2d 755 (7th Cir.1993) provides support. In *Groll*, we reversed the district court's ruling that failure to raise a factual issue in a Rule 11 hearing meant that the defendant could not raise those issues as the legal basis supporting a motion to withdraw a guilty plea. 992 F.2d at 757. The defendant infers from this that whether an issue is raised at a Rule 11 hearing or in a Rule 32(e) motion is irrelevant; according to him, so long as an issue appears in the record, it was properly before the district court, and thus preserved for appeal.

■ This inference is mistaken. The *Groll* panel found error in the district court's refusal to consider a motion to withdraw that contained an articulated defense which had factual support in the record. *Id.* at 758. That is a far cry from the situation we face here, where the district court was never offered an opportunity to decide on the issue. As we noted in *Akinsola*, defendants should make motions first to the trial court because even when motions are denied, the appellate court is aided by a reviewable trial court record. 105 F.3d at 333. If an issue is not

---

**4.** The government does not cite any cases for its proposition that the defendant has totally forfeit-ed the argument he presents for withdrawal of his guilty plea.

raised in the Rule 32(e) motion but was discussed in a Rule 11 hearing, it is waived rather than forfeited, and thus reviewed for plain error.

**B.**

Whether we review under the ordinary standard for denial of a 32(e) motion or plain error, the result is the same—Salgado–Ocampo is not permitted to withdraw his guilty plea. The defendant contends that he was entitled to withdrawal because he is legally innocent of the charges. It is axiomatic that legal innocence is a fair and just reason to withdraw a guilty plea. *See United States v. Groll*, 992 F.2d at 758. However, "claims of innocence alone do not mandate permission to withdraw a plea." *Id.* citing *United States v. Buckles*, 843 F.2d 469 (11th Cir.1988). Assertions of innocence must be buttressed by facts in the record which support a claimed defense. *Groll*, 992 F.2d at 758. *See also United States v. Caban*, 962 F.2d 646, 649 (7th Cir.1992).

Salgado–Ocampo claims the justification defense. To establish that defense, he must satisfy the four-pronged test we laid out in *United States v. Wheeler*, 800 F.2d 100, 107 (7th Cir.1986) overruled on other grounds by *United States v. Sblendorio*, 830 F.2d 1382 (7th Cir.1987), citing *United States v. Gant*, 691 F.2d 1159, 1162–63 (5th Cir. 1982). In *Wheeler* we held that a defendant claiming justification must show that he:

> (1) was under unlawful or present threat of death or serious bodily injury; (2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

800 F.2d at 107.

In choosing this defense, Salgado–Ocampo has selected a tough row to hoe. As

Chief Judge Posner noted in *United States v. Perez*, 86 F.3d 735 (7th Cir.1996), "only in the most extraordinary circumstances ... will th[is] defense entitle the [person prohibited from possessing a weapon] to arm himself in advance of a crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm." *Id.* at 737. Although rarely does not mean never, see *United States v. Panter*, 688 F.2d 268, 271–72 (5th Cir.1982), this is not one of those extraordinary cases.

First we examine whether the defendant was under imminent fear of death or bodily harm.[5] Salgado–Ocampo's claimed defense is that his actions were justified because he had a fear of imminent death or bodily harm when the two men called him to say they planned to return to his wife's home and shoot him. It is important to note that the defendant is charged with illegal *possession* of a firearm, not illegal *use* of a firearm. The relevant inquiry is thus whether he was justified at the moment he borrowed the .380 pistol from his neighbor, not when he brandished the weapon at his wife's neighbor's boyfriend.

As the Fourth Circuit has stated, "it has been only on the rarest of occasions that our sister circuits have found defendants to be in the type of imminent danger that would warrant the application of a justification defense." *United States v. Perrin*, 45 F.3d 869, 874 (4th Cir.1995). A single threat conveyed over a telephone, while serious, generally does not contain the necessary imminence required to make out a justification defense. *Cf. United States v. Gomez*, 92 F.3d 770, 775 (9th Cir.1996) (repeated phone threats from individual with "demonstrated willingness to kill" sufficient to establish imminent danger). In the phone call to Salgado–Ocampo, it was not at all clear the threat would ever be carried out, much less imminently. By the defendant's own account, the threat was received at approximately 7:30 p.m., and the men did not arrive until later that evening. However, as this Court has noted, "later"

---

**5.** The defendant persuasively argues that he meets prong two of the *Wheeler* test. Even the government does not contend that Mr. Salgado–Ocampo recklessly placed himself in harm's way.

He simply asked his neighbor's boyfriend to leave, and waited in his wife's home for the men to return after they threatened him.

and "imminent" are opposites. *United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir.1998). In *Haynes,* we held that a prison inmate was not in imminent danger permitting him to use force when another inmate threatened to harm him "later in the afternoon." *Id.* As in *Haynes,* the telephoned threats here were insufficiently imminent and Salgado–Ocampo is not privileged to arm himself in violation of the federal statute.

 The appellant also encounters difficulty with the third *Wheeler* prong—that he had no reasonable legal alternative to both the criminal act and the avoidance of the threatened harm. "A defendant may not resort to criminal activity to protect himself or another if he has a legal means of averting the harm." *United States v. Perez,* 86 F.3d 735, 737 (7th Cir.1996); see also *United States v. Talbott,* 78 F.3d 1183, 1187–88 (7th Cir.1996).

The Supreme Court's decision in *United States v. Bailey* is instructive.[6] 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). There, the defendants, four men charged with escaping from a federal prison and remaining at large, argued that they were entitled to a duress defense, because they feared being beaten by guards had they remained in prison. 444 U.S. at 398–99, 100 S.Ct. at 628–29. Rejecting this defense, the Supreme Court held that so long as there is "a chance both to refuse to do the criminal act and also to avoid the threatened harm, 'the defense will fail.'" 444 U.S. at 410, 100 S.Ct. at 634 (citations omitted). This Court recently pointed out that in *Bailey,* "even the option of escape followed by immediate surrender to the FBI was enough to foreclose a duress defense." *United States v. Haynes,* 143 F.3d 1089, 1091 (7th Cir.1998). In *Haynes,* we held that fear of being sent to administrative segregation, and of the consequences of reprisals from other prisoners, did not excuse an inmate's failure to seek protection from guards rather than taking matters into his own hands. *Id.*

Salgado–Ocampo claims that he could not call the police because he feared it might lead to his immigration status being uncovered. However, in light of *Bailey* and *Haynes,* this fear does not excuse his failure to notify law enforcement of the threat against him. Moreover, calling the police himself was not the defendant's only method of avoiding the threatened harm. The appellant's wife could have called the police while he vacated the residence until the matter was resolved. Even if he wanted no contact with the police at all he could have taken his wife and children with him and left the house. Instead, after receiving the telephone call, Salgado–Ocampo took the time to borrow a weapon from a neighbor, remained at his wife's residence, and waited for the two men. The defendant made a conscious effort to illegally arm himself and did nothing to avoid the confrontation. These actions are plainly incompatible with the third prong of *Wheeler.*

Given the defendant's failure to meet the *Wheeler* test, the district court's judgment to deny him leave to withdraw his guilty plea was correct.

## II.

 Salgado–Ocampo's second argument is that the district court erred in refusing to group counts one and two for sentencing purposes pursuant to U.S.S.G. § 3D1.2. If the offenses were grouped, he would have been sentenced at Level 12 rather than at Level 14. Under a grouped sentence, his term would be 30–37 months rather than the 38 months imposed by the district court.

 We review a district court's interpretation of the scope of the guidelines *de novo* and its factual findings for clear error. *United States v. Yoon,* 128 F.3d 515, 528 (7th Cir.1997). According to § 3D1.2, multiple counts are to be grouped when they involve substantially the same harm. This occurs when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." § 3D1.2(c).

---

6. Although *Bailey* dealt with duress, this Court observed in *Perez* that necessity, justification, duress and self-defense are interchangeably lumped together under the rubric of the justification defense. 86 F.3d at 736. Thus, *Bailey* and other cases falling under this aegis are salient here.

Salgado–Ocampo argues that 18 U.S.C. § 922(g)(5) (the firearms charge) is actually part of the immigration laws because it forbids all illegal aliens from lawfully possessing firearms. Because of this, he claims, § 922(g)(5) furthers the same interests as 8 U.S.C. § 1326, which prevents previously deported aliens from reentering the United States without permission from the Attorney General. Accordingly, the two violations have the same offense characteristics (they both involve illegal aliens) and thus must be grouped together.

Although this is a case of first impression in the Seventh Circuit, the Ninth Circuit has squarely addressed, and rejected, this argument in *United States v. Barron–Rivera*, 922 F.2d 549 (9th Cir.1991). That court held that grouping together § 922(g)(5) and § 1326 would distort the aim of grouping, because it would combine dissimilar offenses to reduce punishment. *Id.* at 554. It explained that a specific offense characteristic is not the status of a defendant, but rather the type of misconduct that occurs in the course of an event. *Id.* (citations omitted). It concluded that illegally reentering the country after deportation and illegally possessing a firearm share no common offense characteristics. *Id.* We agree—the types of misconduct committed in each of these crimes are in no way similar.

Salgado–Ocampo also obliquely suggests in his brief that the district court erred in failing to group the offenses under U.S.S.G. § 3D1.2(a), which provides for grouping when counts involve "substantially the same harm." Because this claim was not raised in the district court, we review it only for plain error. *United States v. Rivero*, 993 F.2d 620, 623 (7th Cir.1993).

■ Ordinarily, two counts involve substantially the same harm when they involve the same victim. *See* § 3D1.2(a). However, when, as here, the crimes are victimless, "the grouping decision must be based primarily upon the nature of the interest invaded by each offense." § 3D1.2, Application Note 2. *See also Barron–Rivera*, 922 F.2d at 554. Clearly the two offenses committed by the defendant invaded different societal interests. *Id.*; *accord United States v. Baeza-*

*Suchil*, 52 F.3d 898, 899–900 (10th Cir.1995). The first statute Salgado–Ocampo violated, 8 U.S.C. § 1326, is designed to enforce our nation's immigration laws. *See United States v. Mendoza–Lopez*, 781 F.2d 111, 113–114 (8th Cir.1985) (Fagg, J., dissenting). The second statute he violated, 18 U.S.C. § 922(g), protects society from those determined unqualified to possess firearms. *Barron–Rivera*, 922 F.2d at 554 (citing *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir.1989) (citing H.R. Rep. No–495, 99th Cong., 2d Sess. 23 (1986), U.S. Code Cong. & Admin. News at 1327, 1349), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990)). When two such disparate interests are at hand, grouping is inappropriate. *See United States v. Owolabi*, 69 F.3d 156, 166–67 (7th Cir.1995) (holding that illegal reentry and counterfeiting counts should not be grouped under Sentencing Guidelines). Therefore, the district court properly refused to group the two convictions into a single offense category.

### CONCLUSION

Because we find no errors in the district court's denial of the defendant's motion to withdraw his guilty plea or in the sentencing, the judgment below is AFFIRMED.