**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose GOMEZ–OROZCO, Defendant–
Appellant.**

**No. 98–4272.**

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1999.

Decided Aug. 5, 1999.

Estaban F. Sanchez (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

David B. Mote (argued), Office of the Federal Public Defender, Springfield, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Jose Gomez–Orozco pled guilty to one count of illegal re-entry by an alien, in violation of 8 U.S.C. § 1326(a). Upon discovering that he may actually be an American citizen, Gomez–Orozco sought to withdraw his guilty plea prior to his sentencing date. After a hearing, the district court denied his motion and sentenced him to 79 months imprisonment. We reverse.

## I. BACKGROUND

Gomez–Orozco was born in Mexico in 1972. His Presentence Investigation Report ("PSI"), says that he first entered the United States in 1989. In June of 1994, Gomez–Orozco was convicted of attempted robbery and burglary in Illinois. After his release from prison in March of 1995, he was deported to Mexico as an alien convicted of those two offenses. Then, in July of 1996, Gomez–Orozco was arrested again in Illinois and charged with residential burglary. In August of 1996, he was sentenced to four years imprisonment for that offense. In October of 1996, officials from the Immigration and Naturalization Service ("INS") confirmed that Gomez–Orozco was the same individual who had been deported in 1995, and that he had not applied for the proper permission to re-enter the country. Because he was found in the United States after he had previously been deported, a federal grand jury charged Gomez–Orozco in a one count indictment with illegal reentry by an alien. Originally, Gomez–Orozco pled not guilty to the charge, but on February 23, 1998, he voluntarily changed his plea to guilty.

After discovering that his father is an American citizen, Gomez–Orozco asked for a continuance of his sentencing hearing to find out what effect, if any, his father's citizenship would have on the case. The district court, with no objection from the government, allowed the continuance and scheduled Gomez–Orozco's sentencing hearing for July 20, 1998. Before his sentencing hearing, however, Gomez–Orozco sought to withdraw his guilty plea on the basis that he was an American citizen pursuant to 8 U.S.C. § 1409(a) as a child born out of wedlock to an American father. He submitted several exhibits along with his motion to show that his father was an American citizen.

The hearing on July 20, 1998 was transformed from a sentencing hearing to an evidentiary hearing to determine whether the district court should grant Gomez–Orozco's motion to withdraw his guilty plea. Before the evidentiary hearing, however, it came to Gomez–Orozco's attention that his parents may have been married according to common law. Thus, at the hearing, rather than presenting evidence that he is a child born out of wedlock to an American father, a task which may have proved difficult for Gomez–Orozco, he presented evidence that his parents, though not officially married, were married according to the common law of Texas. He presented testimony from his sister and a sworn statement from his father that, at the time Gomez–Orozco was born, his parents were living together and held themselves out as a married couple in Laredo, Texas. Furthermore, Gomez–Orozco supplemented the record with evidence that

common law marriages are recognized in the state of Texas.

The district court acknowledged that Texas recognizes common law marriages, but decided that "the rather slim evidence of [Gomez–Orozco's parents'] possible common law marriage," coupled with the fact that he sought to withdraw his guilty plea six months after entering it did not present a fair and just reason to permit him to withdraw his guilty plea. Gomez–Orozco now appeals that decision.

## II. DISCUSSION

■ Federal Rule of Criminal Procedure 32(e) allows a defendant to withdraw a guilty plea before sentencing if he can show a "fair and just reason" for doing so. However, a criminal defendant does not have an absolute right to withdraw his guilty plea. *United States v. Salgado–Ocampo*, 159 F.3d 322, 324 (7th Cir.1998). The defendant faces an uphill battle in persuading the court that his reason is fair and just when seeking to withdraw a voluntary plea of guilty. *Id.* at 325. A district court's determination that the defendant failed to present a fair and just reason will only be disturbed upon showing an abuse of discretion. *Id.*

■ Gomez–Orozco contends that the district court erred in denying his motion to withdraw his guilty plea because he presented a fair and just reason why it is impossible for him to be convicted of the crime to which he pled guilty. Gomez–Orozco pled guilty to 8 U.S.C. § 1326(a) which states:

Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

*Id.* Thus, it is clear from the language of the statute that the elements of this crime are that the defendant (1) is an alien, (2) was previously deported, and (3) has reentered the United States without proper permission. *See United States v. Flores–Peraza*, 58 F.3d 164, 166 (5th Cir.1995), *cert. denied*, 516 U.S. 1076, 116 S.Ct. 782, 133 L.Ed.2d 733 (1996); *United States v. Barragan–Cepeda*, 29 F.3d 1378, 1381 (9th Cir.1994). It goes without saying that the government must prove every element of this crime beyond a reasonable doubt, including Gomez–Orozco's status as an alien.

■ Being legally innocent of a crime is a fair and just reason to withdraw a guilty plea. *United States v. Groll*, 992 F.2d 755, 758 (7th Cir.1993). However, a blanket claim of innocence does not mandate the court to allow a defendant to withdraw his plea. *Id.* The claim must be supported by credible evidence. *Id.* When a defendant seeks to withdraw his guilty plea on a claim of legal innocence, the district court has three options: (1) it can permit the withdrawal of the plea and let the defendant go to trial, (2) it can conduct an evidentiary hearing on the matter, or (3) it can deny the motion with an explanation as to why the evidence is insufficient or incredible. *Id.* (citation omitted).

■ Gomez–Orozco argues that he cannot be guilty of the crime with which he

is charged because he is the son of a couple who was married at common law, and one of his parents, namely his father, was an American citizen at the time of his birth. In determining Gomez–Orozco's citizenship, the applicable law is that which was in effect at the time of his birth in 1972. *See United States v. Viramontes–Alvarado*, 149 F.3d 912, 915 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 434, 142 L.Ed.2d 354 (1998). At that time (as well as now), the applicable statute was 8 U.S.C. § 1401(g). In 1972, § 1401(g) stated that nationals and citizens of the United States included anyone who was:

> born outside of the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

*Id.* Thus, if Gomez–Orozco was born in wedlock, which includes common law marriages, then he would be a citizen of the United States, and it would not be possible for him to be guilty of the crime with which he was charged. *See* 8 U.S.C. § 1101(b)(2) (defining parent to mean, *inter alia*, bearing a child in wedlock).

 It is undisputed that Gomez–Orozco's parents were not married in the official, ceremonial sense at the time of his birth. Nonetheless, Gomez–Orozco argues that his parents were married according to the common law of Texas, the state where his parents resided at the time of his birth. Only eleven states and the District of Columbia recognize common law marriages. Cynthia Grant Brown, *A Feminist Proposal to Bring Back Common Law Marriage*, 75 Or. L.Rev. 709, 715 (1996). Texas is one of those states. *Russell v. Russell*, 865 S.W.2d 929 (Tex.1993). Under Texas law, there are three elements which must be proved in order to show that two people

are married at common law: (1) there was an agreement to be married; (2) after that agreement, the couple lived together in Texas as husband and wife; and (3) the couple held itself out to others as being married. *Id.* at 932. The existence of a common law marriage in Texas may be proved by circumstantial evidence. *Id.* at 933.

Gomez–Orozco presented evidence supporting the fact that his parents were married according to the common law of Texas at the time of his birth, and that his father is (and always has been) a citizen of the United States. He presented an affidavit from his sister claiming that his mother and father lived together for two years before he was born and for several years after he was born. His father indicated that he lived with Gomez–Orozco's mother "at common law." Gomez–Orozco also submitted a travel document from his mother at the time he was born stating that she was married to his father. Additionally, on this travel document, Gomez–Orozco's name is listed as "Jose Daniel Gomez–Orozco," which, in the Spanish culture, indicates that his parents were married, as it includes both his father's last name as well as his mother's maiden name.

The government argues that the evidence contained in Gomez–Orozco's PSI suggests that his parents were not married under common law. Before the evidentiary hearing, Gomez–Orozco never objected to the PSI, and the PSI states that Gomez–Orozco is a Mexican citizen, that his parents are Mexican citizens, and that his parents were never married. Furthermore, the PSI states that Gomez–Orozco told his probation officer that he lived in Mexico for most of his life, and that he never entered the United States until 1989. Lastly, the government argues that Gomez–Orozco entered his guilty plea knowingly and voluntarily. Thus, it suggests that the district court did not abuse its discretion in denying Gomez–Orozco's motion to withdraw his guilty plea. We disagree.

Gomez–Orozco has presented substantial evidence that his parents were married under common law at the time he was born. While this evidence is disputed, the fact remains that he has provided a fair and just reason to withdraw his plea of guilty so that he may determine the status of his citizenship. Along with relying on the "contested and equivocal" evidence in denying Gomez–Orozco's motion, the district court relied heavily on the fact that he did not raise this motion until six months after he entered his plea. While we agree with the district court that waiting six months to withdraw a guilty plea may be a long time, in this case, the reason for the delay is justified.

Not only is Gomez–Orozco asserting a claim of legal innocence, but his counsel below was unaware that his father was born in the United States. As soon as his present counsel became aware of the situation, he acted upon it. In addition, Gomez–Orozco did not know that his parents may have been married under common law until the government attorney mentioned that it was a possibility. Again, Gomez–Orozco's counsel acted immediately upon receiving this information. Rather than determining that six months was an unreasonable delay, a more appropriate method of looking at the situation is gauging how soon Gomez–Orozco acted after he received the relevant information.

We are not now deciding the issue of Gomez–Orozco's citizenship. We simply state that he has presented enough evidence to show a fair and just reason why he is permitted to withdraw his guilty plea. The government must now be put to its burden of proving every element of 8 U.S.C. § 1326(a) beyond a reasonable doubt, including the element that Gomez–Orozco is, indeed, an alien. Since Gomez–Orozco has shown that he may be an American citizen, either as a child born to an American citizen in wedlock pursuant to 8 U.S.C. § 1401(g), or as a child born to an American father pursuant to 8 U.S.C. § 1409(a), it is possible that a jury may find a reasonable doubt about his alienage, and therefore, that he cannot be convicted of the offense. Thus, we REVERSE the district court's decision to deny Gomez–Orozco's motion to withdraw his guilty plea.

### III. CONCLUSION

For the foregoing reasons, the district court's denial of Gomez–Orozco's motion to withdraw his guilty plea is REVERSED, and he shall be given an opportunity to go to trial on the charge that he violated 8 U.S.C. § 1326(a).