[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14651
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:11-cr-00221-CAP-GGB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SILVANO JIMENEZ-CARDENAS,
a.k.a. Jaime Lopez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 22, 2012)

Before HULL, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Silvano Jimenez-Cardenas (hereinafter "Jimenez")

appeals his total 57-month sentence for illegal reentry, in violation of 8 U.S.C. § 1326(a), and possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5). This appeal presents the sentencing guidelines issue of whether the district court properly refused to group Jimenez's § 1326(a) illegal reentry and § 922(g)(5) firearm convictions. After review, we conclude the district court properly refused to group these convictions.

## I. BACKGROUND

### A. Arrest and Guilty Plea

Defendant Jimenez is a citizen of Mexico. In 1994, Jimenez was convicted of felony drug trafficking offenses in California state court and served over a year in prison. In 1996, Jimenez was removed from the United States and then removed again in 1998 and 2007. After his 2007 removal, Jimenez illegally reentered the United States in 2008 by walking across the border into Texas.

In December 2010, a police officer in Gwinnett County, Georgia, observed a passenger sitting inside a vehicle parked in a motel parking lot. When the officer asked the passenger whether he was a guest at the motel, the passenger indicated that his friend was reserving a room. Because the officer smelled marijuana, he asked the passenger for identification and permission to search the vehicle. The passenger consented to a search.

2

At this point, Defendant Jimenez approached the vehicle. Jimenez told the officer that he was driving the vehicle, but it belonged to a friend. Jimenez also consented to a search of the vehicle. During the search, officers discovered one firearm inside the pocket of a jacket lying on the driver's side of the vehicle and another firearm under the passenger seat.

Jimenez was charged with reentering the United States after being deported, in violation of 8 U.S.C. § 1326(a) and (b)(2) (Count 1), and possessing a firearm as an illegal alien, in violation of 18 U.S.C. § 922(g)(5) (Count 2). Jimenez pled guilty to both counts. At the plea hearing, Jimenez admitted that the gun found in the jacket was his, that he obtained the gun from a friend who was returning to Mexico and that he had the gun "because [he] was thinking about selling it" because he "didn't have money to pay [his] rent."

**B. Sentencing**

The Presentence Investigation Report ("PSI") calculated Jimenez's offense level separately for each count of conviction and then determined the combined offense level using U.S.S.G. § 3D1.4. Specifically, the PSI assigned Count 1 (illegal reentry) a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a), and then applied a 16-level adjustment, pursuant to § 2L1.2(b)(1)(A), due to Jimenez's prior felony drug trafficking offense, yielding an adjusted offense level of 24. For

3

Count 2 (firearm possession), the PSI assigned a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4), because Jimenez committed Count 2 after having sustained a felony conviction for a controlled substance offense.

Then, applying U.S.S.G. § 3D1.4(a), the PSI added 2 levels to the highest offense level of the two counts of conviction (level 24 for Count 1), for an adjusted total offense level of 26. After applying a 3-level reduction for acceptance of responsibility, the PSI calculated a total offense level of 23. Jimenez's criminal history category of III and total offense level of 23 resulted in an advisory guidelines range of 57 to 71 months' imprisonment.

Jimenez objected, arguing that his offense level should be calculated by grouping his two counts of conviction together, pursuant to U.S.S.G. § 3D1.2, and that the 2-level enhancement under § 3D1.4(a) should not apply.[1]

At sentencing, the district court overruled Jimenez's objection and found that Jimenez had a total offense level of 23 and a criminal history of III, which yielded an advisory guidelines range of 57 to 71 months. The district court imposed a concurrent 57-month sentence on each count. Jimenez filed this appeal

---

[1]Grouping Counts 1 and 2 under § 3D1.2 would have eliminated the 2-level enhancement under § 3D1.4(a) and produced an offense level of 24. See U.S.S.G. § 3D1.3. With the 3-level adjustment for acceptance-of-responsibility, the total offense level would be 21 and the advisory guidelines range would be 46 to 57 months' imprisonment.

challenging the district court's refusal to group Counts 1 and 2 for purposes of calculating his offense level.

## II. DISCUSSION

When a defendant has more than one count of conviction, U.S.S.G. § 3D1.1 of the Sentencing Guidelines instructs the district court to group the counts "into distinct Groups of Closely Related Counts" by applying the rules in § 3D1.2. After that is done, the district court determines the offense level for each Group by applying the rules in U.S.S.G. § 3D1.3. The district court then determines the "combined offense level" applicable to all "Groups taken together" by applying the rules in U.S.S.G. § 3D1.4. See U.S.S.G. § 3D1.1(a).

### A. Grouping Under U.S.S.G. § 3D1.2

Under § 3D1.2, counts of conviction are grouped together if they "involve substantially the same harm within the meaning of this rule." U.S.S.G. § 3D1.2. Counts involve "substantially the same harm" under this rule when they satisfy any of these four requirements: (a) they "involve the same victim and the same act or transaction"; (b) they "involve the same victim and two or more acts or transactions" that either are "connected by a common criminal objective" or constitute "part of a common scheme or plan"; (c) "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment

to, the guideline applicable to another of the counts"; or (d) the offense level for each count "is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. § 3D1.2(a)-(d). For the reasons explained below, Jimenez's two counts of conviction do not fall within any of the four subsections in § 3D1.2.[2]

**B.    U.S.S.G. § 3D1.2(a) and (b)**

First, Jimenez's offenses do not have an identifiable victim, much less the "same victim," as required in the first two grouping subsections of U.S.S.G. § 3D1.2. The term "victim" in § 3D1.2(a) and (b) refers to an identifiable person who was "directly and most seriously affected by the offense" and does not include "indirect or secondary victims." U.S.S.G. § 3D1.2 cmt. n.2. Jimenez's illegal reentry and firearm convictions do not have a victim directly affected by the offenses.

We recognize that for offenses without an identifiable victim, such as immigration offenses, the "victim" is the societal interest that was harmed.

---

[2]We review a district court's factual findings for clear error and its interpretation and application of the guidelines de novo. United States v. Doe, 661 F.3d 550, 565 (11th Cir. 2011), cert. denied, ____ U.S. ____, No. 11-8510, 2012 WL 254846 (U.S. Feb. 27, 2012).

U.S.S.G. § 3D1.2, cmt. n.2.  We agree with the other circuits that have addressed this issue that illegal reentry under 8 U.S.C. § 1326(a) and possession of a firearm under 18 U.S.C. § 922(g) harm different societal interests.  See United States v. Herrera, 265 F.3d 349, 352–53 (6th Cir. 2001) (concluding that counts for § 1326(a) and § 922(g)(5) offenses should not be grouped because the purposes behind the laws are dissimilar); United States v. Salgado-Ocampo, 159 F.3d 322, 328 (7th Cir. 1998) (concluding that § 1326(a) and § 922(g)(5) counts should not be grouped because the types of misconduct involved are dissimilar);  United States v. Baeza-Suchil, 52 F.3d 898, 899–900 (10th Cir. 1995) (concluding that § 1326(a) and § 922(g)(1) counts should not be grouped because different societal interests were harmed); United States v. Barron-Rivera, 922 F.2d 549, 554-55 (9th Cir. 1991) (concluding that counts under § 1326(a) and § 922(g)(5) should not be grouped because these offenses pose threats to distinct societal interests even though both involve being an illegal alien).

The statutes criminalizing each of Jimenez's offenses involve different conduct—reentering the United States after deportation and possessing a firearm while being an illegal alien.  Salgado-Ocampo, 159 F.3d at 328.  The statutes also do not further the same societal interest.  While 8 U.S.C. § 1326 seeks to effectively enforce immigration laws, 18 U.S.C. § 922(g) protects society against

7

firearm possession by those deemed unqualified to possess them.  Herrera, 265

F.3d at 353.  Although § 922(g)(5) has as an element being an illegal alien, this

similarity with § 1326 is not enough to treat the two, otherwise very different

offenses as constituting a single offense for purposes of the guidelines.  See

Herrera, 265 F.3d at 352-53; Salgado-Ocampo, 159 F.3d at 328; Barron-Rivera,

922 F.2d at 554-55.  Because the societal interests implicated by each count are

distinct, the counts are not sufficiently closely related to be grouped together

under § 3D1.2(a) or (b).

## C.    U.S.S.G. § 3D1.2(c)

The district court also properly concluded that Jimenez's two counts of

conviction do not satisfy the third grouping test in U.S.S.G. § 3D1.2(c).

Under § 3D1.2(c), counts are grouped together if one count embodies

conduct that is also a specific offense characteristic supporting an adjustment to

the guideline applicable to another count.  U.S.S.G. § 3D1.2(c) & cmt. n.5.  This

subsection "prevents 'double counting,'" but "applies only if the offenses are

closely related."  U.S.S.G. § 3D1.2, cmt. n.5.  Therefore, if the harm from one

count is not a specific offense characteristic of the other count, the counts are not

grouped under this subsection.  Id.

In Jimenez's case, neither offense involved conduct that was a specific

offense characteristic supporting an adjustment to the offense level of the other count. That is, Jimenez's firearm possession did not enhance his offense level for his illegal reentry offense, and his illegal reentry into the United States (and status as an illegal alien) did not enhance his offense level for his firearm offense. In reaching this conclusion, we agree with two other circuits that have rejected grouping in this situation. See Salgado-Ocampo, 159 F.3d at 328 (Seventh Circuit agreeing with the Ninth Circuit in Barron Rivera, 922 F.2d at 554, that the defendant's illegal immigration status is not a specific offense characteristic of either a § 1326(a) or a § 922(g)(5) offense).

Jimenez complains that his prior felony drug trafficking conviction was a specific offense characteristic that enhanced both counts. However, his prior conviction is not a conduct element of either his § 1326(a) count or his § 922(g) count. Section 3D1.2(c) requires grouping when a specific offense characteristic for one count is also the conduct representing another count, which is not the case here.

**D.    U.S.S.G. § 3D1.2(d)**

The district court also did not err in concluding that grouping was inappropriate under U.S.S.G. § 3D1.2(d).

Under § 3D1.2(d), counts are grouped if each guideline provision calculates

9

the offense level for that count based on, <u>inter alia</u>, some measure of aggregate harm, such as total loss or drug quantity. U.S.S.G. § 3D1.2(d). Subsection (d) applies to "most property crimes . . . , drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior." U.S.S.G. § 3D1.2, cmt. n.6.

Although Jimenez had only one firearm, U.S.S.G. § 2K2.1, the guideline applicable to Jimenez's § 922(g)(5) firearm offense, does calculate offense level based on the number of firearms. Section 2K2.1 contains specific offense characteristic adjustments based on the number of firearms involved and, thus, logically falls under subsection (d). <u>See</u> U.S.S.G. § 2K2.1(b).

The problem for Jimenez is that U.S.S.G. § 2L1.2, the guideline used to calculate his offense level for his immigration offense, does not fall within the purview of, or list of covered offenses in, § 3D1.2(d). <u>See</u> U.S.S.G. § 3D1.2(d). Section 2L1.2 does not quantify the harm to calculate the defendant's offense level. Thus, the offense level for Jimenez's immigration offense is not determined at all, much less "largely," by aggregate harm. <u>See</u> U.S.S.G. § 3D1.2(d) (requiring offense level to be "determined largely" by total loss or harm).

Grouping of unlisted offenses "may or may not be appropriate," and the court must make "a case-by-case determination . . . based upon the facts of the

case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level." Id. Jimenez relies on this statement in § 3D1.2(d) and argues that his counts should have been grouped together because the applicable guideline for his firearm offense, § 2K2.1, is listed in subsection (d) as appropriate for grouping and, using a case-specific determination, the applicable guideline for his immigration offense, § 2L1.2 should also be covered. As stated above, § 2L1.2 does not meet the criteria for grouping under this subsection because it does not determine the offense level on the basis of some measure of aggregate harm. Therefore, under the facts of Jimenez's case and given the two applicable guidelines involved, the district court did not err in concluding that grouping was inappropriate under § 3D1.2(d).

## III. CONCLUSION

For all of these reasons, we conclude that the district court properly refused to group Jimenez's § 1326(a) and § 922(g)(5) counts under U.S.S.G. § 3D1.2 and correctly calculated Jimenez's combined offense level under U.S.S.G. § 3D1.4. Accordingly, we affirm Jimenez's total 57-month sentence.

**AFFIRMED.**

11