UNITED STATES of America,
Plaintiff–Appellee,

v.

George E. HAYNES, also known as
Bucky, Defendant–Appellant.

No. 98–2803.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1999.

Decided June 4, 1999.

Kit R. Morrissey (argued), Office of the U.S. Atty., Criminal Division, Fairview Heights, IL, J. Christopher Moore, Office of the U.S. Atty., Benton, IL, for United States.

Scott Kamin (argued) Chicago, IL, for George E. Haynes.

Before Bauer, Flaum, and Manion, Circuit Judges.

Bauer, Circuit Judge.

On November 5, 1997, a three-count superseding indictment charged George Haynes ("Haynes") with one count of possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1); and two counts of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On December 10, 1997, Haynes pleaded guilty to all three counts. At sentencing, the district court determined that Haynes had violated the Armed Career Criminal provision of 18 U.S.C. § 924(e), and therefore, enhanced his sentence, pursuant to U.S.S.G. § 4B1.4(b)(3). Affirmed.

I. BACKGROUND

William "Rusty" Haynes ("Rusty") is Haynes' cousin. On September 28, 1997,

Haynes came to Rusty's house, gave Rusty a quarter pound of marijuana, and told him to sell the marijuana for him at $100 per ounce. Haynes also told Rusty to hold his .25 caliber semi-automatic hand gun, magazine clip, and holster because he did not want to be in possession of a firearm since he was a convicted felon. Fearing that Haynes would inflict physical injury or death if he did not comply, Rusty agreed to sell the marijuana for Haynes.

On September 30, 1997, Rusty voluntarily went to the Jefferson County, Illinois Sheriff's Department and informed them that Haynes was forcing him to sell marijuana and hold a firearm. Rusty gave the marijuana and the firearm to the police and told them how each was obtained. Rusty also told the police the source of Haynes' marijuana supply and that Haynes was preparing to travel to Texas for a new supply of marijuana.

After Haynes returned from Texas, he went to Rusty's house and demanded the return of his gun. Because Rusty had already turned the gun over to the police, he told Haynes that he had given the gun to a friend to hold for a few days and that this friend also wanted to buy a quarter pound of marijuana. Haynes agreed to sell the quarter pound of marijuana to Rusty's friend.

On October 7, 1997, Haynes returned to Rusty's house with the quarter pound of marijuana. Haynes became angry when he learned that Rusty still had not retrieved the gun from the friend. He told Rusty that he wanted $400 for the marijuana and that he would return that night to retrieve the money and the gun. After Haynes left, Rusty called the police and told them about his encounter with Haynes. Accordingly, the police returned the gun to Rusty and wired Rusty's house for audio and video recording.

That evening, Haynes returned to Rusty's house accompanied by his girl-friend, Ginger Garcia. Haynes demanded the return of his gun and Rusty complied. Upon receipt, Haynes began to handle the gun and, while doing so, he pulled back the slide on the gun. With the gun in hand, Haynes set the terms for the sale of the marijuana and also discussed whether Rusty could sell the gun to his friend. At the conclusion of the conversation, Haynes put the gun in his waistband and headed for the door. The police recorded the entire conversation.

As Haynes left Rusty's house, he was confronted by the police. A struggle ensued and police were able to acquire Haynes' gun, but only after Haynes had kicked and punched two of the police officers. Following Haynes' arrest, the police discovered that Haynes had more than 30 grams of marijuana on him. The police also searched Garcia and found marijuana on her. Garcia told the police where Haynes had stashed the rest of his marijuana and led them to the location, Upon arrival the police recovered another one and a quarter pounds of marijuana.

At sentencing, the district court applied U.S.S.G. § 4B1.4(b)(3)(A) and enhanced Haynes' offense level because it determined that Haynes possessed the firearm "in connection with" his distribution of marijuana. On appeal, Haynes does not deny that he was engaged in felonious conduct, i.e., the possession with intent to distribute marijuana. Nor does he contend that he was in possession of a firearm at the time of the controlled substance offense. Rather, Haynes argues that the possession of the firearm was merely coincidental to, and not "in connection with," the distribution of the marijuana and, therefore, an enhanced sentenced was not warranted.

## II. DISCUSSION

██ The district court's determination involved a mixed question of fact and law. The district court's interpretation of the Sentencing Guidelines is reviewed *de novo* and its findings of fact are reviewed for clear error. *United States v. Mattison,* 153 F.3d 406, 412 (7th Cir.1998). We begin our analysis by focusing on the lan-

guage of U.S.S.G. § 4B1.4(b)(3), which states:

(b) The offense level for an armed career criminal is the greatest of:

.        .        .        .

■ (3)(A) **34**, if the defendant used or possessed the firearm or ammunition *in connection with* a crime of violence or controlled substance offense, as defined in § 4B1.2(1), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a)[ ]; or

(B) **33**, otherwise.[ ]

*Id.* (emphasis supplied). The Guidelines do not define the phrase "in connection with." In the absence of any Guideline definition, we must construe the phrase according to its ordinary and natural meaning. *See Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). "Language, of course, cannot be interpreted apart from context." *Id.* at 229, 113 S.Ct. 2050.

■ While this Circuit has not defined the phrase "in connection with," in the context of U.S.S.G. § 4B1.4(b)(3)(A), we have interpreted the very same phrase in the context of U.S.S.G. § 2K2.1(b)(5). *United States v. Wyatt,* 102 F.3d 241 (7th Cir.1996). U.S.S.G. § 2K2.1(b)(5) provides, in pertinent part: "If the defendant used or possessed any firearm or ammunition *in connection with* another felony offense . . . increase [the offense level] by 4 levels." (Emphasis supplied). In *Wyatt,* we held that the phrase "in connection with" has a meaning similar to the phrase "in relation to" in 18 U.S.C. § 924(c)(1), which imposes a five-year minimum term of imprisonment upon a person who "during and *in relation to* any crime of violence or drug trafficking crime . . . uses or carries a firearm." (Emphasis supplied). In *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), the Supreme Court defined the phrase "in relation to:"

The phrase "in relation to" . . . at a minimum, clarifies that the firearm must have some purpose or effect with re-

spect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. . . . Instead, the gun must facilitat[e], or ha[ve] the potential of facilitating, the drug trafficking offense.

*Id.* at 238, 113 S.Ct. 2050 (internal quotations and citations omitted). In *Wyatt,* we applied the *Smith* Court's definition of the phrase "in relation to" to the phrase "in connection with" and held that a weapon is used or possessed "in connection with" an offense under § 2K2.1(b)(5) if the weapon facilitated or served some purpose to the felonious conduct. *Id.* at 247, 113 S.Ct. 2050. Conversely, we held that where the firearm's presence is merely coincidental or accidental to the offense, the weapon is not used or possessed "in connection with" the offense. *Id.* We see no reason to treat the "in connection with" language in U.S.S.G. § 4B1.4(b)(3)(A) differently from that of § 2K2.1(b)(5). *See United States v. Gary,* 74 F.3d 304, 317 (1st Cir.1996) (holding that the "in connection with" language, that appears in both U.S.S.G. § 2K2.1(b)(5) and § 4B1.4(b)(3)(A), should be given identical interpretations).

■ The facts show that the gun facilitated Haynes' transfer of the marijuana to Rusty. Drug dealers do not bring guns to a deal unless they wish to instill fear in their business associates or they feel the need for protection. Either way, the gun served a purpose in the deal and was therefore used in connection with the felonious conduct. The accessibility and proximity of Haynes' gun to the two drug transactions support the inference that the gun was possessed in connection with Haynes' illegal dealings. *See United States v. Ewing,* 979 F.2d 1234, 1238 (7th Cir.1992) ("The seizure of a firearm in close proximity to illegal drugs is considered powerful support for the inference that the firearm was used in connection with the drug trafficking operation.").

The inferences drawn by the district court were sufficiently supported by the evidence. We find no error in the district

court's enhancement of Haynes' offense level because it properly determined that he possessed the firearm in connection with his distribution of marijuana.

AFFIRMED.