In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2532

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARK PIKE,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 98 CR 48--Robert L. Miller, Jr., Judge.

Argued December 8, 1999--Decided May 1, 2000

   Before HARLINGTON WOOD, JR., COFFEY and FLAUM, Circuit
Judges.

   COFFEY, Circuit Judge.  On September 11, 1998, a
federal grand jury sitting in the Northern
District of Indiana returned a six count
indictment against Mark Ira Danewood Pike./1 On
October 28, 1998, the defendant pled guilty to
counts one, five, and six of the indictment (the
government moved to dismiss counts two and four)
but prior to sentencing, and after he obtained
new counsel, Pike filed a motion to vacate his
plea of guilty pursuant to Fed. R. Crim. P.
32(e). Pike contended that he had a valid defense
to the section 924(c)(1)(A) charge, contained in
count six, in that he did not carry the firearm
"in relation to" his drug trafficking crime. Pike
later filed another motion, in an attempt to
vacate his guilty plea, contending that his plea
was not knowingly and voluntarily made because of
his original trial counsel's failure to explain
the phrase "in relation to" contained in section
924(c)(1)(A). The district court denied Pike's
motions, and sentenced him to 87 months'
imprisonment, three years' supervised release,
and a $300 special assessment. We affirm.

I.  BACKGROUND

   On five occasions in the month of July, 1998,
Pike used his Chevrolet Camaro to deliver and
sell marijuana and LSD to an undercover police
officer of the Multi-County Drug Task Force in

Plymouth, Indiana./2 On July 22, 1998, approximately five minutes after Pike made his last drug sale to an undercover police officer, officers from the Plymouth, Indiana, Police Department arrested Pike and conducted a search of the vehicle pursuant to the arrest, recovering a .410 caliber shotgun from the hatchback of his automobile./3

As stated before, Pike initially pled guilty, but before sentencing, on January 5, 1999, Pike's original counsel, Timothy P. McLaughlin, filed a motion to withdraw because Pike informed him that he wished to retain other counsel. The district court granted the motion. On January 8, 1999, Pike's new counsel, John Theis, filed a Motion to Vacate Plea of Guilty, arguing that Pike could not be guilty of the section 924(c)(1)(A) charge to which he had pled guilty because although Pike carried his shotgun "during" a drug trafficking crime, he did not carry it "in relation to" that crime. On February 1, 1999, Pike filed an amended motion to vacate his plea of guilty, arguing that his previous counsel, McLaughlin, had not provided him with the effective assistance of counsel by allegedly failing to adequately explain the "in relation to" element of section 924(c)(1)(A)./4

The district court held a two-day hearing on the Rule 32 motion. At the hearing, Pike claimed that he purchased the shotgun for hunting purposes only and that the gun was normally kept at his grandmother's house and not in his car. Pike, in an obvious fabrication, further testified that a friend brought the gun to him and placed it in the trunk of the Camaro, where it was found by police officers, in between the time of the first and second drug transactions on July 22nd, the date of his arrest. Pike explained that he only told the officers on the scene that the shotgun was always kept in his car because he did not want his grandmother to lose her home; a concern that has no basis in the law. Finally, Pike claimed that he would not have pled guilty if McLaughlin had adequately explained the "in relation to" element of section 924(c).

The government countered Pike's arguments at the Rule 32 hearing by pointing out that at no other time during the investigation of this case had Pike claimed to have used the shotgun for hunting purposes. The government also pointed out that Pike purchased the shotgun and ammunition during the time frame he was engaged in the sale and distribution of narcotics, and had informed police officers on the scene at the time of his arrest that he kept the weapon in his car at all times during the drug transactions with the undercover police officer. Finally, the

government argued that Pike, on July 22, 1998, invited the undercover police officer into his car to complete the narcotics transaction, and even though the officer did not observe the weapon at that time, the gun was found minutes later when police officers arrested Pike and searched the hatchback of his Camaro.

At the hearing, attorney McLaughlin did admit that he never discussed the "in relation to" element with Pike "in those terms . . . not with the words 'in relation to.'" But, contrary to Pike's assertion that his original attorney failed to advise him of the meaning of the phrase "in relation to", McLaughlin stated that he did advise Pike that there was a relationship between Pike's firearm and his drug trafficking because Pike carried the shotgun in his car during a drug transaction: "because the weapon--the firearm was found in the car at the time of his arrest, that he was not going to be able to beat this case." Moreover, Pike admitted that McLaughlin discussed the "in relation to" element, although not in those exact terms, with him "two or three times."

In denying Pike's amended motion to withdraw his guilty plea, the judge stated that:

Mr. Pike was his only witness, and he was not a credible witness in any respect. He contradicted countless of his own prior statements--statements reportedly (and admittedly) made to law enforcement agents, statements made in writing to his lawyer, statements this court finds to have been made verbally to his lawyer, and statements (oral and written) made to the court during the guilty plea process. His smirking while testifying further detracted from his credibility. Whatever support Mr. Pike is to find for his motion [to withdraw his guilty plea] then, he must find outside his own testimony."

The judge went on to conclude that:

[t]he issue before the court, of course, is not whether Mr. Pike might have been convicted at trial, but whether fair and just reason exists to withdraw his plea. Mr. McLaughlin advised that Mr. Pike--having been arrested minutes later with a gun in the car in which the drugs were distributed--probably would not be able to beat the gun charge. Why should reliance on sound legal advice warrant the plea's withdrawal? Mr. Pike points to Mr. McLaughlin's concession that he never explained the "in relation to" element to Mr. Pike. . . .

* * *

[But] Mr. Pike plainly understood that "in

relation to" was an element, and recognized that it might present an impediment to conviction: notwithstanding having carried the shotgun during the transaction, he told Mr. McLaughlin that he did not believe that he was guilty--a belief that could find logical basis only in this allegedly inadequate explained element. Perhaps Mr. McLaughlin might have explained the law more fully to Mr. Pike, rather than simply stating his ultimate opinion, but doing so would have amounted to explaining the absence of a defense not the availability of a defense.

(Emphasis added). Based on these findings, the trial judge concluded that Pike failed to convince the court that a fair and just reason existed for withdrawing his guilty plea. Pike appeals.

## II. ISSUES

On appeal, Pike argues that the district court erred in denying his motion to vacate his guilty plea because he presented two "fair and just" reasons: 1) he had a valid defense to the section 924(c)(1)(A) charge; and 2) his plea was not "knowing and voluntary" because it was the product of his lawyer's ineffective assistance.

## III. ANALYSIS

### A. Standard of Review

It is axiomatic that defendants do not have an absolute right to withdraw their guilty pleas. See United States v. Schilling, 142 F.3d 388, 398 (7th Cir. 1998). Of course prior to sentencing, a judge may permit an individual to withdraw his plea, upon the filing of the proper motion, if the defendant presents a "fair and just" reason for doing so to the court, see Fed. R. Crim. P. 32(e); United States v. Abdul, 75 F.3d 327, 329 (7th Cir. 1996), but the burden of justifying relief always rests with the defendant. See United States v. Coonce, 961 F.2d 1268, 1275 (7th Cir. 1992). Therefore, we review a district court's denial of a defendant's motion to withdraw a guilty plea for abuse of discretion. See United States v. Salgado-Ocampo, 159 F.3d 322, 325 (7th Cir. 1998). "In reviewing the district court's decision, findings regarding whether the defendant has demonstrated a 'fair and just reason' will be upheld unless they are clearly erroneous." United States v. LeDonne, 21 F.3d 1418, 1423 (7th Cir. 1994). "A factual determination is clearly erroneous only if, after considering all of the evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Messino, 55 F.3d 1241, 1247 (7th Cir. 1995).

B.   A Legal Defense

   Initially, Pike argues that the district court
committed error in not allowing him to withdraw
his guilty plea and go to trial because he had a
"viable, triable, and valid defense" to the
section 924(c)(1)(A) charge. In so arguing, Pike
contends that he did not carry his shotgun "in
relation to" his drug offense because there is no
relationship between his shotgun and his drug
offense. That is, according to Pike, the fact
that he never "brandished, made reference to, or
committed any act relating to the shotgun during
the drug transaction" requires that he be allowed
to withdraw his guilty plea.

   Contrary to Pike's assertions, sufficient
evidence exists to satisfy the "in relation to"
element of section 924(c). As the Supreme Court
has noted, the "in relation to" element of
section 924(c)(1)(A) is satisfied by evidence
that the defendant carried his weapon to further
the "purpose or effect" of his crime. See Smith
v. United States, 508 U.S. 223, 238 (1993)
(emphasis added). That is,

[t]he "during and in relation" element of sec.
924(c)(1) has also certainly been met for "if the
drugs and gun are together in the same place it
is nearly an inescapable conclusion that they
satisfy the in relation to prong of sec.
924(c)(1)." Molina, 102 F.3d at 932 (emphasis in
original). The "during and in relation to"
determination is based on the location of the
firearm with respect to the drugs. Id. "The
relation between the firearm and the drugs--which
is, after all, the core of the offense--is best
established by their relation to each other, and
not by the distance between owner and gun at the
moment of arrest." Id. In order for a firearm to
satisfy the "in relation to" prong of the offense
it must at least "'facilitat[e], or ha[ve] the
potential of facilitating,' the drug trafficking
offense." Smith, 508 U.S. at 238, 113 S. Ct. at
2059 (quoting United States v. Stewart, 779 F.2d
538, 540 (9th Cir. 1985)). "This explanation of
the 'in relation to' element is valid precedent,
unaffected by Bailey." Cotton, 101 F.3d at 56.
The facts of this case reveal that the gun was
located in a plastic bag positioned directly on
top of the drugs and therefore Wilson would have
had to, at the very least, remove the gun and
hold it in order for him to gain access to the
drugs. Thus, in this case, just as in Molina, the
firearm was "surely carried in relation to the
crime when it was transported in a car in the
same compartment that contain[ed] drugs possessed
with the intent to distribute." Molina, 102 F.3d
at 932.

Wilson, 125 F.3d at 1093 (emphasis in original). See also United States v. Hayes, 179 F.3d 1045, 1047 (7th Cir. 1999) ("Drug dealers do not bring guns to a deal unless they wish to instill fear in their business associates or they feel the need for protection."); United States v. Hubbard, 61 F.3d 1261, 1270 (7th Cir. 1995) ("[F]irearms are recognized as tools of the drug trade; thus, courts have sustained the admission of weapons evidence in narcotics cases because the possession of a weapon is often a hallmark of drug trafficking."); United States v. Cooper, 19 F.3d 1154, 1163 (7th Cir. 1994) ("[t]his Court has previously held that weapons are 'tools of the trade' of drug dealers"). Bearing this standard in mind, we are convinced that there is sufficient evidence in the record to support the "in relation to" element in this case; that is, that the shotgun in the trunk of the hatchback and the drugs were sufficiently connected.

Initially, let us point out that in both his plea agreement and again during his plea hearing Pike stated that he was guilty of the section 924(c)(1)(A) charge, specifically stating that he carried the shotgun in his car during the July 22nd drug transaction. This representation is entitled to a presumption of verity, see United States v. Ellison, 835 F.2d 687, 693 (7th Cir. 1987), and "the district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing." United States v. Groll, 992 F.2d 755, 758 (7th Cir. 1993).

In addition to Pike's own representations, the evidence reflects that Pike carried the shotgun with him during each of the five drug transactions with the undercover officer;/5 that Pike's shotgun was "accessible though not gracefully or rapidly so" from within Pike's car;/6 and that Pike bought the shotgun during the time he was engaging in his drug trafficking activity. This evidence establishes that the presence of the shotgun in Pike's Chevy Camaro was neither the result of accident nor mere coincidence. See Smith, 508 U.S. at 238. Accordingly, we conclude that the district court's determination that there was a relationship between Pike's shotgun and his drug offense was not clearly erroneous, and therefore the trial judge did not abuse his discretion in denying Pike's motion to withdraw his guilty plea.

C.  Ineffective Assistance of Counsel

Pike next argues that the judge should have

allowed him to withdraw his guilty plea because he was denied the effective assistance of counsel. "In order to succeed on such a claim, [Pike] must show that the advice on which his plea was predicated not only was not within the range of competence demanded of attorneys in criminal cases, but also that there is a reasonable probability that but for [McLaughlin's] unprofessional errors, the result would have been different." United States v. Malave, 22 F.3d 145, 147 (7th Cir. 1994) (internal quotations and citations omitted). And, as we have long held, courts begin with the presumption that a defendant has not suffered prejudice. See Strickland v. Washington, 466 U.S. 668, 689 (1984).

In an attempt to demonstrate prejudice, Pike argues that because his original attorney, McLaughlin, failed to adequately explain the "in relation to" element of section 924(c)(1)(A), he did not understand the meaning of "in relation to," and his plea was therefore not "knowing and voluntary." Cf. United States v. Musa, 946 F.2d 1297, 1305 (7th Cir. 1991). But Pike ignores the facts of this case.

Let us initially make clear that the record in this case is entitled to a presumption of verity. See United States v. Standiford, 148 F.3d 864, 868 (7th Cir. 1998). "When, as here, a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was given freely and knowingly, he faces an uphill battle in persuading the judge that his purported reason is fair and just." Salgado-Campo, 159 F.3d at 325 (internal quotations and citations omitted).

Furthermore, we are of the opinion that in relation to is an understandable phrase common in ordinary speech; evidenced by the fact that it is the precise language used in the jury instruction for section 924(c)(1)(A) offenses. See Seventh Circuit Federal Jury Instructions: Criminal 236 (1999); see also United States v. Malin, 908 F.2d 163, 168 (7th Cir. 1990) ("The phrase 'in relation to' speaks for itself; any further explanation is superfluous.").

Additionally, count six of the indictment charged that Pike "knowingly and intentionally carried a firearm, specifically, a .410 shotgun, during and in relation to drug trafficking crimes . . . ." Moreover, the plea agreement Pike signed recited that he "told his lawyers the facts and surrounding circumstances as known to me concerning the matters mentioned in the Indictment and the complaint and believe and feel that my lawyer is fully informed as to all such matters. My lawyer has since informed me and has

counseled and advised me as to the nature and cause of every accusation and as to any possible defense I might have in this case." Furthermore, in the plea agreement, Pike specifically admitted that

In particular, I [Pike] acknowledge that on July 10, 1998, I knowingly possessed with intent to distribute and then distributed to a person who turned out to be an undercover police officer approximately 1 oz. of marijuana, all in Plymouth, Indiana. I also acknowledge that on July 22, 1998 I knowingly possessed with intent to distribute and distributed to a person who turned out to be an undercover police officer 17 hits of LSD acid in Plymouth, Indiana. Further, I acknowledge that during and in relation to the drug trafficking crime on July 22, 1998 described above, I knowingly carried in my car a .410 shotgun which belonged to me[.]

(Emphasis added). Also in the plea agreement, Pike acknowledged, when referring to his original counsel, McLaughlin, that "I believe and feel that my lawyer has done all that anyone could do to counsel and assist me, and that I now understand the proceedings in this case against me." (Emphasis added).

Not only did Pike acknowledge his understanding of the charges against him and his guilt by signing the plea agreement, but at the plea hearing, the following dialogue took place with the presiding judge:

THE DEFENDANT: I acknowledge that during and in relation to the drug trafficking crime on July 22, 1998 described above, I knowingly carried in my car a .410 shotgun which belonged to me. . . .

THE COURT: Everything in there is right?

THE DEFENDANT: Yes.

Also during the plea hearing, the prosecutor listed the essential elements of the section 924(c)(1)(A) charge:

With respect to count 6, your Honor, carrying a weapon during a drug trafficking crime, the government would have to prove that the defendant knowingly carried a firearm during and in relation to a drug trafficking crime, in this case, the distribution and possession with intent to distribute LSD.

The district court then asked Pike if he still believed that he was guilty, and Pike responded that he was.

Finally, although McLaughlin admitted that he never discussed the phrase "in relation to" with Pike "in those terms . . . not with the words 'in relation to,'" he did, contrary to Pike's assertions, clearly admonish and advise Pike that there was a relationship between Pike's firearm and his drug trafficking in view of the fact that Pike carried the shotgun in his car during a drug transaction: "because the weapon--the firearm was found in the car at the time of his arrest, that he was not going to be able to beat this case."/7 Moreover, Pike admitted, in further contrast to his claim that his original counsel failed to adequately explain "in relation to," that McLaughlin had discussed the "in relation to" element with him "two or three times." Furthermore, Pike testified at the Rule 32 hearing that he believed there was an "in relation to" element of the section 924(c) offense "because of the way it's stated."

   After reviewing the record before us, we agree with the trial judge's determination that, based on the facts set forth above, Pike "knowingly and voluntarily" chose to plead guilty to the section 924(c)(1)(A) charge.

   The district court's decision is

AFFIRMED.


/1 The indictment charged the defendant with counts one and four, distribution and possession with intent to distribute marijuana, in violation of 21 U.S.C. sec. 841(a)(1); counts two, three, and five, distribution and possession with intent to distribute LSD acid, in violation of 21 U.S.C. sec. 841(a)(1); and count six, possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. sec. 924(c).

/2 Pike made these drug sales on July 10, 1998, July 15, 1998, July 16, 1998, and on two occasions on July 22, 1998.

/3 Pike testified at the Rule 32 hearing that the shotgun was accessible from inside his car, though not from the front seat: "you can reach from the back of the car and into the hatch."

/4 In Wilson v. United States, 125 F.3d 1087, 1093 (7th Cir. 1997), this circuit held that "[i]n order for a firearm to satisfy the 'in relation to' prong of the offense it must at least 'facilitat[e], or ha[ve] the potential of facilitating' the drug trafficking offense." (quoting Smith v. United States, 508 U.S. 223,

238 (1993) (other quotation omitted).

/5 At the Rule 32 hearing Pike testified that he put the shotgun in his car "knowing that [he was] going to conduct [the second July 22 drug] transaction."

/6 It is not necessary that the defendant have immediate access to the weapon. See Muscarello v. United States, 524 U.S. 125, 137-38 (1998).

/7 We note that lawyers are not expected to carry around dictionaries and the latest electronic research in order that they be prepared to give their client multiple descriptions of how their conduct violated the law. Instead, Pike's attorney informed Pike, albeit in layman's terms, that there was little likelihood that Pike could "beat" the gun charge.