**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles BOLTON, Defendant–**
**Appellant.**

No. 02–2323.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 2002.

Decided May 5, 2003.

Before RIPPLE, ROVNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

Charles Bolton was an unlicensed firearms dealer who was caught and later pleaded guilty to violations of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) (knowingly and willfully engaging in the business of dealing in firearms without having obtained a federal license to do so) and 18 U.S.C. § 924(a)(1)(A) (making a false statement to a firearms dealer). At sentencing, the district court concluded that a four-level upward adjustment to Bolton's offense level was called for under U.S.S.G. § 2K2.1(b)(5), which covers use, possession, or transfer of a firearm in connection with another felony offense. On appeal, Bolton's only claim is that the district court erred when it applied that adjustment. We find it difficult to follow the district court's reasoning for this decision, and, because we are concerned that the court may have relied on reasons foreclosed by the governing law, we vacate the sentence and remand the case for resentencing in accordance with this order.

## I

Between 1997 and 1999, Bolton purchased eleven handguns, seven of which he either sold without a firearms license or traded in exchange for marijuana. The federal Bureau of Alcohol, Tobacco and Firearms (ATF) learned about these transactions during a routine investigation into purchasers of firearms whose weapons had been recovered from another individual or at a crime scene. This discovery prompted a further investigation, which led to Bolton's arrest in December 2001. During an interview shortly after his arrest, after receiving his *Miranda* warnings, Bolton described the transfer of one of the guns. He explained that he owed money to a former friend, Shokee Cleveland, for some marijuana that Cleveland had sold to him. Cleveland was interested in the gun as partial payment because he was unable to purchase a firearm himself. Cleveland may have been under a disability related to mental health, as he had apparently shot himself on one occasion. Bolton thought that Cleveland's inability to buy a firearm directly stemmed from his previous commitment to a mental institution, but Cleveland never confirmed or denied that fact. In any event, the transfer took place: Bolton bought the firearm for Cleveland, Cleveland forgave $200 of Bolton's marijuana debt, and Cleveland also gave Bolton $50 in cash.

On December 4, 2001, the grand jury returned a three-count indictment against Bolton, charging him with unlawful dealing in firearms (Count One) and knowingly making false statements to a firearms dealer (Counts Two and Three). A few months later, Bolton pleaded guilty to Count One of the indictment and to an information that charged him with knowingly making a false statement and representation with respect to information that licensed firearms dealers are required by law to keep. The parties agreed that the government would rec-

ommend a base offense level of 12, under U.S.S.G. § 2K2.1(a)(7), and that a four-level increase was appropriate under § 2K2.1(b)(1)(B) because the offense involved 11 firearms. The parties also acknowledged that the government was going to recommend another four-level increase pursuant to § 2K2.1(b)(5) for transferring a firearm with reason to believe that it would be possessed in connection with another felony offense, and that Bolton would not join in that recommendation. The Presentence Report tracked most of this, including most importantly the government's position that the § 2K2.1(b)(5) enhancement was proper.

The district court decided to accept the probation officer's recommendation to apply § 2K2.1(b)(5). Unfortunately, however, it is difficult for us to tell why the court did so. In his oral findings, Judge Stadtmueller did not specify whether he thought the guideline applied (1) because Bolton used the firearm in connection with another felony offense, or (2) because Bolton had reason to believe that the firearm would be used or possessed in connection with another felony offense (in the future). Instead, the judge relied generally on *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), which held that trading a firearm for drugs can constitute "use" of that weapon within the meaning of 18 U.S.C. § 924(c)(1). Recognizing that *Smith* was not precisely on point, because there was no direct exchange of the gun for drugs between Bolton and Cleveland, the court concluded that the adjustment should apply because Bolton's firearm purchase for Cleveland amounted to the same thing.

The court also suggested an entirely different reason why § 2K2.1(b)(5) should apply, which relied on the fact that Bolton had given the firearm to a person who was not permitted to possess it:

> But the additional ingredient that we have here is the matter of Mr. Bolton contributing to the unlawful possession of a firearm by someone who was under a disability from owning a firearm ... What is at issue is a reasonable inference from Mr. Cleveland's statements to Mr. Bolton that he could not lawfully acquire a firearm in his own right, which in my mind's eye presents more than a sufficient nexus as to what the Sentencing Commission had in mind when they adopted [§ 2K2.1(b)(5)].

The judge did not explain what connection he saw between the "additional ingredient" he identified and the question whether Bolton had used the gun in connection with a gun trafficking offense or had reason to believe that it would be used in connection with another felony offense.

## II

This court ordinarily would review the district court's decision that the factual predicate for applying § 2K2.1(b)(5) was present for clear error. See *United States v. Brumfield,* 301 F.3d 724, 730 (7th Cir. 2002). Nevertheless, before we can conduct meaningful review, it is also necessary for us to have an adequate understanding of what facts the district court actually found, and on what basis it made those findings. See *United States v. Schaefer,* 291 F.3d 932, 938–39 (7th Cir. 2002); cf. *United States v. Menza,* 137 F.3d 533, 538 (7th Cir.1998) (restitution context). In this case, we are not confident that we have such an understanding. Moreover, as we explain below, we find problems with the various theories the court may have been considering. We thus see no alternative to a remand for further consideration of the question whether this enhancement was proper, and if so, on what exact basis.

■ *"Prohibited Person."* The first possibility we consider is that the enhancement was somehow justifiable on the theory that the firearm transfer to Cleveland was illegal because he was a "prohibited person." A "prohibited person" is someone who cannot legally possess a firearm. The idea here is that under 18 U.S.C. § 922(d)(4), Cleveland could not lawfully possess a firearm, because that statute makes it a crime to sell a firearm to any person if the seller has "reasonable cause to believe that such person has been adjudicated as a mental defective or has been committed to any mental institution." The evidence on that point is thin, at best. Bolton told ATF investigators that he believed that Cleveland "was committed to a mental hospital, but I do not know for certain. I saw the scar on [Cleveland's] stomach" from where Cleveland apparently shot himself. It is hard to convert this speculation into support for a finding that Bolton had reasonable cause to believe that Cleveland had been committed to an institution.

Even if we could take that step, there is a second problem with this theory. The group of felonies to which § 2K2.1(b)(5) applies includes only "offenses other than explosives or firearms possession or trafficking offenses." *Id.,* cmt. n. 18; see *United States v. Szakacs,* 212 F.3d 344, 350 (7th Cir.2000). Possession of a firearm by a prohibited person is a firearms possession offense. *United States v. Brazeau,* 237 F.3d 842, 844–45 (7th Cir.2001). That means that this offense cannot, as a matter of law, constitute the "other" felony offense to which § 2K2.1(b)(5) refers. Furthermore, this court has also held that the other felony offense must be separated in time or by a "distinction of conduct." *Szakacs,* 212 F.3d at 351 (collecting cases). Since the crime for which Bolton was charged—dealing in firearms without a license—involved precisely the same conduct as his transfer of the firearm to a prohibited person, his transfer of the firearm to Cleveland cannot support the application of § 2K2.1(b)(5).

*Firearm Transfer In Connection With Drug Trafficking Offense.* Second, the court's citation of *Smith* suggests that it might have been thinking that Bolton's transfer of the firearm to Cleveland occurred "in connection with" a drug trafficking offense. Bolton argues that there was no direct exchange of a gun for drugs, and thus once again § 2K2.1(b)(5) cannot apply. He is correct to note that *Smith* is distinguishable in some respects from his case. In *Smith,* the Supreme Court held that if a defendant trades a firearm for drugs, he has used that firearm during and in relation to a drug trafficking offense for purposes of 18 U.S.C. § 924(c)(1). 508 U.S. at 241. Furthermore, the phrase "in relation to" the drug offense used in § 924(c)(1) has been equated to the requirement in § 2K2.1(b)(5) that the firearm transfer must be "in connection with" another felony offense. See *United States v. Haynes,* 179 F.3d 1045, 1047 (7th Cir. 1999).

■ The reason Bolton's case is more difficult is because Bolton merely used the firearm to satisfy a prior drug debt. He could have given Cleveland anything of value to pay off the debt: currency; a Rolex watch; a sapphire pendant; or a firearm. The drug transaction had already taken place on credit, and there is no evidence in the record at present that would support a finding that Cleveland expected a firearm as payment. Although the expression "in connection with" should not be construed narrowly, *see United States v. Wyatt,* 102 F.3d 241, 247 (7th Cir.1996), there are nevertheless some limits. Under § 2K2.1(b)(5), if the firearm is not traded directly for drugs, there must be a showing that it "served some purpose with respect to the felonious conduct," and

that it was not "merely coincidental to that conduct." *Id.* In the cases where this court has found the requisite connection, the guns have either been in close proximity to the drugs or they have been otherwise accessible to the drug distributor. *Id.; see also United States v. Jackson,* 300 F.3d 740, 747 (7th Cir.2002) (defendant possessed firearm and drugs contemporaneously); *Haynes,* 179 F.3d at 1047 (gun possessed during distribution of illegal drugs). Even though we accept that guns are "tools of the drug trade," *United States v. Rhodes,* 229 F.3d 659, 661 (7th Cir.2000), we think that the government has so far failed to show that the transfer here occurred in connection with the drug trafficking offense. On remand, the district court is free to explore this connection further.

■ *Possession In Connection with Another Felony Offense.* Last, the court may have been thinking that Cleveland, who appears to have been in the marijuana business, may have been likely to use the firearm Bolton procured for him "in connection with another felony offense." Although this line of argument as a theoretical matter does not suffer from as many problems as the first two, in the end we are not confident that the district court made the necessary findings to support this ground. Bolton correctly observes that there was no evidence that Cleveland or anyone else did anything to link the gun to the drug trade. But § 2K2.1(b)(5) does not require that the defendant know exactly how and when a weapon will be used in another felony offense. *United States v. Messino,* 55 F.3d 1241, 1256 (7th Cir.1995). There is also no requirement of a direct nexus between the weapons possessed by the defendant and the felony offense. *United States v. Rogers,* 46 F.3d 31, 33 (7th Cir.1995). The only evidence in the record is that Cleveland sold personal amounts of marijuana to Bolton. Nothing suggests that he either did or did not sell drugs to other individuals, despite the probation officer's willingness to accept this as a given, and the officer's further assumption that Cleveland would use the gun in connection with those assumed sales. The district court's oral explanation for applying the adjustment made no mention of this theory; its written judgment is equally unhelpful, as it merely adopted the factual findings and guidelines computations in the PSR as a general matter.

### III

Because we are not certain why the district court decided that Bolton's conduct warranted the four-level upward adjustment provided by § 2K2.1(b)(5), and because none of the possible reasons the court may have had is without difficulties, we conclude that Bolton's sentence must be VACATED and the case must be REMANDED for resentencing in accordance with this order.

*It Is So Ordered.*