**UNITED STATES of America,
Appellee,**

v.

**John ORTEGA, Defendant–Appellant,**

**No. 03–1756.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 22, 2004.

Decided: Oct. 4, 2004.

---

Timothy W. Hoover (MaryBeth Covert, of counsel, on the brief), Federal Public Defender's Office, Western District of New York, Buffalo, NY, for Defendant–Appellant.

Stephen Bazcynski, Assistant United States Attorney (Michael A. Battle, United States Attorney, Frederick J. Platek, Assistant United States Attorney, on the brief), Western District of New York, Buffalo, NY, for Appellee.

Before: MESKILL, McLAUGHLIN, and B.D. PARKER, Circuit Judges.

PER CURIAM.

Defendant–Appellant John Ortega appeals from a judgment of conviction and sentence by the United States District Court for the Western District of New York (Arcara, *C.J.*). He pled guilty under a plea agreement to being a felon in possession of a weapon, 18 U.S.C. § 922(g), and was sentenced principally to 57 months imprisonment, in part, on the basis of the District Court's application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for possessing a firearm "in connection with" the commission of another felony. It is the application of this enhancement that is the subject of Ortega's appeal. We now affirm the conviction and sentence.

## I. Facts and Lower Court Decision

The relevant facts are as follows. Ortega was arrested in his home on January 4, 2002, after federal agents executed a search warrant based on the purchase by a confidential informant ("CI") of marijuana from Ortega's son, Johnny, earlier in the day. Although they expected only to find drugs in the apartment, the police also found three firearms, including a sawed-off shotgun recovered in the attic, a single-shot shotgun recovered in the garage, and a revolver found in a suit-coat pocket in Ortega's bedroom closet. Also found in the closet were 235.8 grams of marijuana (in a clear plastic bag on the floor) and $1,050 in currency (in a dresser). Defendant stated, after the search, that he had been selling marijuana for approximately two years in order to support a long-standing heroin addiction, and that he had

purchased the revolver about two months earlier after he had heard that someone intended to rob him.

Ortega pled guilty to possession of a firearm by a felon, and a presentence report (PSR) was prepared by the probation office. The PSR recommended, *inter alia,* a four-level enhancement pursuant to section 2K2.1(b)(5) of the United States Sentencing Guidelines for possession of a firearm "in connection with" felony distribution of marijuana. *See* U.S.S.G. § 2K2.1(b)(5) ("If the defendant used or possessed any firearm or ammunition in connection with another felony offense ..., increase by 4 levels."). Both Ortega and the government objected to the enhancement—Ortega, because there was no proof of any kind offered to prove that the guns were used in connection with the sale of marijuana, and the government, because it had no reason to suspect the presence of weapons in the house in the first place (based on the CI's dealings with Ortega's son) and because it "had no proof to connect the weapons discovered with drug transactions." Statement of the Government With Respect to Sentencing Factors at 3. The Court, however, applied the enhancement. In particular, it noted that one of the firearms "was found in the suit pocket in the same closet in which defendant stored over two hundred

and thirty-five grams of marijuana," and concluded on that basis that "the defendant purchased the firearms for protection in connection with the threat of robbery," but "also with the drug trafficking activity," and that "the firearms facilitate the offense [of drug trafficking] by providing a means of protection." Tr. of 11/05/03, at 13–15.

## II. Discussion

### A. *Standard of Review.*

While the District Court's factual determinations are reviewed for clear error, *see United States v. Dodge,* 61 F.3d 142, 146 (2d Cir.1995), where the facts are undisputed and the issue is whether they warrant application of a particular provision of the Guidelines, the review is *de novo. United States v. Feliz,* 286 F.3d 118, 119 (2d Cir.2002) (per curiam). Here, the determination of whether the guns found in Ortega's home were possessed by him "in connection with" his distribution of marijuana would seem to us to be a factual finding subject to review for clear error, but both parties frame the issue as one involving the application of the Guidelines to undisputed facts subject to *de novo* review.[1] Since we find that Ortega's appeal must fail even under the more exacting *de novo* review, we need not determine

---

1. Although we have not specifically ruled on the issue, our previous cases interpreting this provision of the Guidelines strongly suggest that the determination of whether a firearm was possessed "in connection with" the commission of another felony is a factual one subject to review for clear error. *See, e.g., United States v. Mitchell,* 328 F.3d 77, 83 (2d Cir.2003) (reviewing district court's finding that "there was good reason to believe that these guns would be used in future crimes," and subsequent application of section 2K2.1(b)(5), for clear error); *United States v. Spurgeon,* 117 F.3d 641, 644 (2d Cir.1997) (per curiam) ("we cannot say that the district court was *clearly erroneous* in concluding that

the defendant was engaged in a felony at the time the weapon was discovered" (emphasis added)); *accord United States v. Haynes,* 179 F.3d 1045, 1047–1048 (7th Cir.1999) ("The inferences drawn by the district court were sufficiently supported by the evidence. We find no error in the district court's enhancement of Haynes' offense level because it properly determined that he possessed the firearm in connection with his distribution of marijuana."). Without the benefit of any briefing by the parties, and because, in any event, we would reach the same outcome of affirmance under a more deferential standard, we decline to reach the issue today.

the appropriate standard of review in this case.

### B. The District Court Properly Found that Ortega Used the Firearms "In Connection With" the Commission of a Felony.

Section 2K2.1(b)(5) of the Sentencing Guidelines requires district judges to enhance a sentence by four points "if the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). Although the Guidelines do not specify precisely the meaning to be given the phrase "in connection with," we have previously held that the phrase "is materially indistinguishable from the 'in relation to' language of 18 U.S.C. § 924(c)(1)," Spurgeon, 117 F.3d at 644, which criminalizes the use of a firearm "in relation to any crime of violence or drug trafficking." 18 U.S.C. § 924(c)(1). Under that standard, the preponderance of the evidence must indicate that "the firearm served some purpose with respect to the felonious conduct." Spurgeon, 117 F.3d at 644. "[C]onversely, where the firearm's presence is merely coincidental to that conduct, the requirement is not met." Id.

We have little doubt that the District Court reached the correct conclusion that Ortega possessed the firearms "in connection with" his felonious drug dealing. Ortega claims that the firearms' presence in his house—even the presence of the revolver in the same closet where much of the marijuana and cash were found—was purely coincidental with respect to the drugs, because he had received specific information that his house might be robbed. While it is true that Spurgeon requires more than mere proximity to the drugs, see 117 F.3d at 644, we also held in that case that the defendant's assertion

that he needed the gun for protection, when the gun was found in the same bag as a triple beam scale with drug residue on it, was sufficient to support a finding that the gun was used "in connection with" involvement in a narcotics conspiracy. Id.; see Smith v. United States, 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (in the context of 18 U.S.C. § 924(c)(1), "the gun at least must 'facilitate, or have the potential of facilitating,' the drug trafficking offense") (alterations omitted). As in Spurgeon, Ortega's revolver was located where much of the marijuana was stored, and Ortega, too, professed the need for a gun as protection. In fact, we are baffled by the Government's representation to the sentencing court that it "had no proof connecting the weapons discovered with drug transactions." Accordingly, we find that it is clear from the circumstances, by a preponderance of the evidence, that Ortega "intended to use the gun if a contingency arose" in connection with the drug dealing. Cephas v. Nash, 328 F.3d 98, 106 (2d Cir. 2003) (internal quotation marks omitted).

We **AFFIRM** Ortega's conviction and sentence. However, the mandate in this case will be held pending the Supreme Court's decision in United States v. Booker, No. 04–104, and United States v. Fanfan, No. 04–105 (to be argued October 4, 2004). Should any party believe there is a need for the District Court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the Court will not reconsider those portions of its opinion that address Ortega's sentence until after the Supreme Court's decision in Booker and Fanfan. In that regard, the parties will have until fourteen days following the Supreme Court's decision to file supplemental peti-

tions for rehearing in light of *Booker* and *Fanfan*.