UNITED STATES of America, Plaintiff–Appellee,

v.

Rolf ANTON, Defendant–Appellant.

No. 88–2451.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1989.
Decided Oct. 26, 1989.

David J. Stetler, Asst. U.S. Atty., Matthew M. Schneider, Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Gregory L. Schlesinger, Schlesinger & Krasny, Chicago, Ill., for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

CUDAHY, Circuit Judge.

Defendant Rolf Anton, no stranger to this court, appeals his conviction under 8 U.S.C. section 1326 of unlawfully being present in the United States after having been arrested and deported. We affirm.

## I.

The facts of this case are not complex. Rolf Anton, a citizen of the Federal Republic of Germany, was arrested and deported in 1984, 1985 and 1986 for violating United States immigration laws. During each deportation proceeding, officials of the Immigration and Naturalization Service (the "INS") explained to Anton that any future appearances in this country without permission from the Attorney General would constitute a felony. Undeterred, Anton entered this country three days after his December 1986 deportation by walking across the American–Canadian border near Blaine, Washington. Finally, on November 6, 1987, Anton surrendered to an INS agent in Chicago and requested that he be sent back to West Germany. INS Special Agent Joseph Gardsbane arrested Anton that same day for violating 8 U.S.C. section 1326, and a jury sitting in the Northern District of Illinois returned a guilty verdict on March 15, 1988. Four months later, the district court sentenced Anton to a term of eight months imprisonment, with credit for time served.

Anton now challenges his conviction, claiming that the district court erred by excluding evidence concerning the amnesty provisions of the Immigration Reform and Control Act of 1986, Pub.L. No. 99–603, 100 Stat. 3359 (1986). Specifically, Anton charges that the district court's refusal to allow his attorney to cross-examine an INS agent on these amnesty provisions and its exclusion of certain documents amount to reversible error.

## II.

At the core of Anton's analysis is our decision in *United States v. Anton*, 683 F.2d 1011 (7th Cir.1982) ("*Anton I*"). There, we considered whether the provisions of section 1326 allow an alien to present a limited mistake of law defense to the charge of unlawfully being present in the United States. Section 1326 provides:

> Any alien who—
>
>> (1) has been arrested and deported or excluded and deported, and thereafter
>>
>> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
> shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

8 U.S.C. § 1326.[1] In construing this provision, we explained that in order to demonstrate a violation of section 1326, the government must establish "(1) that the accused is an alien; (2) that he previously was arrested and deported according to law;[2] and (3) that he subsequently was found unlawfully in the United States." *Anton I*, 683 F.2d at 1016 (footnote supplied); *see Pena–Cabanillas v. United States*, 394 F.2d 785, 789 (9th Cir.1968). Further, we held that even if the government could establish these three factors, a defendant might nonetheless successfully challenge his arrest by proving that he *"reasonably* believed that he had the consent of the Attorney General to reenter the United States." *Anton I*, 683 F.2d at 1018 (emphasis in original). However, we limited this "mistake of law" defense to situations in which "the accused's mistake [is] objectively reasonable under the circumstances presented." *Id.; see United States v. Moore*, 627 F.2d 830, 833 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *see also United States v. Witvoet*, 767 F.2d 338, 340 (7th Cir.1985) (reaffirming *Moore* ). Because the district court in *Anton I* instructed the jury to ignore Anton's testimony that he reasonably believed he had entered the United States lawfully, we reversed his conviction and remanded the case based upon our interpretation of the statute.[3] A jury subsequently acquitted Anton at retrial.

Perhaps recalling his earlier success before our court, Anton now claims that the district court's ruling in the instant case— sustaining the government's objection to the scope of his cross-examination of an INS agent—deprived him of an opportunity to demonstrate his reasonable belief that he may have been eligible for amnesty, in violation of our earlier directive in *Anton I*. Because *Anton I* was a different case, we disagree.

In *Anton I*, the district court instructed the jury not to consider Anton's testimony that he believed he had entered the United States lawfully; here, the district court gave no such improper instruction. Instead, the trial judge told the jurors that they could return a verdict of guilty only if they found that the defendant "was *willfully* in the United States unlawfully," and the judge then defined willfulness as "a *voluntary* and *intentional* violation of a *known* legal obligation." Tr. at 207–08 (emphasis supplied). These instructions fully comport with our opinion in *Anton I*.

More important, however, is the differing nature of the evidence proffered and rejected in this case. As a preliminary matter, "a reviewing court gives special deference to the evidentiary rulings of the trial court. We shall only overrule such rulings on a showing that the trial court has abused its discretion." *United States v. Kaden*, 819 F.2d 813, 818 (7th Cir.1987). In *Anton I*, the district court erred by instructing the jury to disregard Anton's own testimony, thereby preventing him from demonstrat-

1. Congress amended section 1326 eight months after Anton's trial. *See* 8 U.S.C.A. § 1326 (West Supp.1989). Since this amendment applies only to aliens who were found in the United States after November 18, 1988, Pub.L. No. 100–690, 102 Stat. 4471, Title VII, § 7345(b) (1988), it is not relevant for purposes of this appeal.

2. The Supreme Court determined after our decision in *Anton I* that aliens may collaterally attack the underlying validity of deportation proceedings in a section 1326 prosecution when the proceeding "effectively eliminates the right of the alien to obtain judicial review...." *United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987).

3. Ours is the only circuit thus far to adopt this reading of the statute. *See, e.g., United States v. Espinoza–Leon*, 873 F.2d 743, 746 (4th Cir.) (ex-

plicitly rejecting *Anton I*'s limited mistake of law defense), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989); *United States v. Miranda–Enriquez*, 842 F.2d 1211, 1212 (10th Cir.) (holding no specific intent to violate law need be shown), *cert. denied*, —— U.S. ——, 109 S.Ct. 100, 102 L.Ed.2d 75 (1988); *United States v. Newton*, 677 F.2d 16, 17 (2d Cir.) (same), *cert. denied*, 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982); *United States v. Hussein*, 675 F.2d 114, 115–16 (6th Cir.) (same), *cert. denied*, 459 U.S. 869, 103 S.Ct. 154, 74 L.Ed.2d 129 (1982); *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972) (same); *Pena–Cabanillas v. United States*, 394 F.2d 785, 788–90 (9th Cir.1968) (same).

**56**

ing that he reasonably believed he had entered the United States lawfully. On the other hand, the district court in the case before us did not bar Anton from testifying to his state of mind; instead, the court excluded the testimony of an INS agent who was asked to explain the amnesty provisions of the Immigration Reform and Control Act of 1986. By its very nature, the testimony excluded here could not have demonstrated Anton's state of mind; rather, such evidence could only have provided the jury with the *INS agent's* understanding of the Act's amnesty provisions. Our decision in *Anton I* does not license the jury to hypothesize whether a person *might develop* a reasonable belief that he entered the United States lawfully based upon the existing state of the law. Instead, we ask the jury to determine whether the defendant actually did hold such a belief based upon the defendant's knowledge of the law. Hence, the INS agent's testimony, was, at least in the context presented here, essentially irrelevant, and the district court did not abuse its discretion by excluding it.[4]

### III.

Anton also claims that the district court erroneously refused to admit into evidence a 1986 INS document that allegedly demonstrates his interest in the amnesty provisions of the Act. The controverted INS memorandum, dated December 24, 1986, contains Anton's name, and states, in pertinent part, "that an alien who has been convicted of a felony or three or more misdemeanors committed in the United States is not eligible to apply for legalization.... [I]t is determined that the above subject [Anton] is precluded from filing a claim to eligibility." Again, applying the abuse of discretion standard for trial court evidentiary rulings, *United States v. Kaden*, 819 F.2d at 818, the court properly excluded this evidence. The mere fact that Anton inquired about his immigration status on the eve of his 1986 deportation does not support his contention that he believed he could lawfully enter the country days later. If anything, the INS document demonstrates just the opposite: its substance confirms that the INS reviewed Anton's file and specifically concluded that he had no legal right to be present in the United States.[5] Anton's intimation that he could have interpreted this document to have authorized amnesty simply does not amount to an "objectively reasonable [belief] under the circumstances presented." *Anton I*, 683 F.2d at 1018. The INS document unambiguously states that Anton "is precluded from filing a claim" for eligibility. Testimony elicited at trial, as well as other government documents signed by Anton, also suggest that he could not have reasonably believed his presence in the United States was lawful. *See, e.g.*, Government Exhibit 6 (Nov. 6, 1987) ("I fully realize that I needed permission from the Attorney General to re-apply for admission to the United States because of my prior deportations. I also admit that I did not receive such permission. I admit that I am in violation of the laws of the United

---

4. This result might have been different had Anton's decision not to testify been based upon the district court's exclusion of evidence. However, we do not reach that question here. Anton has not argued at any stage of these proceedings that the district court's ruling influenced his decision not to testify. When asked by the government, Anton's attorney specifically refused to make a proffer that Anton would have testified to his state of mind in the absence of such a ruling. Tr. at 47. In no way, then, has Anton been precluded from "informing the jury in respect to his belief." *Anton I*, 683 F.2d at 1018 n. 10 (quoting *People v. Weiss*, 276 N.Y. 384, 12 N.E.2d 514 (1938)). Indeed, Anton's decision not to testify probably represents a strategic choice: had he taken the witness stand and testified to his belief about amnesty, the government might have introduced evidence of Anton's prior convictions in order to demon-

strate the unreasonableness of this belief. Tr. at 42–50. Our decision in *Anton I* does not preclude a defendant from making such a choice.

5. It remains uncertain which prior convictions in the United States were relied upon by the INS to support its conclusion that Anton was ineligible for temporary resident status. To be sure, Anton's murder conviction in the Federal Republic of Germany precluded amnesty. *See* 8 U.S.C. § 1182(a)(9) (1982 & Supp. V 1987). However, the relevant issue here is not the basis of the INS's determination, but whether Anton could have interpreted the document to constitute authorization for amnesty by the Attorney General. As discussed *infra*, the language used in the document does not allow such an interpretation.

States."); Government Exhibit 7 (Nov. 6, 1987) ("I admit I am in the United States Illegally."); Tr. at 90–92 (discussing Anton's admission). Since the excluded document could not have demonstrated that Anton reasonably believed he was eligible for legalization, the court's refusal to admit it into evidence did not constitute error.[6]

### IV.

Even after a full-blown trial and appeal, Anton has not presented any evidence demonstrating that he reasonably believed he could enter the United States lawfully. The district court's evidentiary rulings were well within this court's mandate in *Anton I* and had little apparent effect upon the outcome of the trial here.

The judgment of the district court is therefore

AFFIRMED.

---

**6.** It is still unclear exactly why Anton may have believed he was eligible for legalization under the amnesty provisions of the Act. He has intimated on appeal that he thought his wife and child's residence in this country might provide such a basis, but even this assertion is couched in indefinite terms: *"If* Anton believed that the presence of his wife and child in the United States afforded him legal status in the United States then he did not have the requisite mental state to be convicted under Section 1326." Brief and Appendix for Appellant at 10–11 (emphasis supplied). In any event, none of the testimonial or documentary evidence presented by Anton—including that excluded by the district court—supports this contention.