**UNITED STATES of America, Plaintiff,**

v.

**Joseph GRIEVESON, Defendant.**

**No. IP 00–071–01–CR–B/F.**

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 28, 2000.

Gayle Helart, Assistant United States Attorney, Indianapolis, IN, for U.S.

James C. McKinley, Federal Community Defenders Office, Indianapolis, IN, for Joseph Grieveson.

## ENTRY ON PRETRIAL MOTIONS

BARKER, Chief Judge.

Defendant, Joseph Grieveson ("Grieveson"), is charged with violating 8 U.S.C. § 1326, which prohibits reentry by a deported alien. The Defendant tendered three proposed jury instructions and filed a motion in limine to exclude evidence related to prior arrests, convictions, probation or parole violations, or any other facts related to defendant's criminal history as well as a motion to strike surplusage from the indictment (a motion that has survived the filing of a Superseding indictment). The Government opposed these submissions, but otherwise filed no motions in limine of its own.

The primary disagreement in this case centers on whether § 1326 includes any mens rea requirement and, if so, how this requirement is imported into the statute. As explicated below, we find that Section 1326 does not include a "specific intent" element as argued by the Defendant; rather, caselaw from this circuit must be read to import mens rea into the Section only to the extent that an affirmative defense exists which enables the defendant to show he had a reasonable belief that he had the consent of the Attorney General of the United States to reenter the country. With this understanding of the Section's requirements, it is clear that Grieveson's proposed jury instructions are not accurate. In addition, in light of this applica-

tion of the law, the Government accedes to Defendant's pretrial motions.

## Facts

We are informed by the parties' submissions that the following facts will be presented at trial: Grieveson, a Canadian citizen, was arrested on or about December 28, 1998, on an INS warrant of deportation. On June 25, 1999, Grieveson was transported from an INS detention facility in Denver to Detroit where his deportation was processed and Grieveson was taken across the border to Canada pursuant to INS deportation procedures. On or about May 11, 2000, Grieveson was found once again within the United States, after an arrest for an alcohol related driving offense, for which he had been detained in the Bartholomew County (Indiana) Jail where he was interviewed by an INS agent. A subsequent INS investigation revealed the earlier deportation, after a conviction for an aggravated felony, following which Grieveson had not been given permission by the Attorney General or her designees to reenter the United States.

Grieveson has informed the Court that he intends to stipulate to the following facts: that he is an alien, that he was previously arrested and deported, and that he was thereafter found in the United States without having obtained the express or implied permission of the Attorney General of the United States. The only additional facts Grieveson wishes to place in evidence relate to his claim that he reentered the United States to answer to four pending state criminal matters in Bartholomew County, Indiana, for which court dates had been set and for which a Superior Court Judge had ordered Grieveson to appear, and, therefore, caused Grieveson mistakenly to believe that he was entitled to be in the United States. This theory of defense, and the supporting evidence, has prompted the current dispute between the United States and Grieveson, given that the Government seeks to exclude Defendant's evidence and opposes Defendant's proffered instructions.

We are further informed by the parties submissions and arguments that following Grieveson's deportation in June of 1999, he was ordered by a Bartholomew County Superior Court Judge to appear in Bartholomew County Superior Court in October of 1999 and, when he failed to do so, the matters were reset in February and May of 2000. According to the Government, documents show that an arrest warrant was issued by the Superior Court on February 7, 2000, due to Grieveson's failure to appear on three pending alcohol and driving offenses and a check deception offense. On February 23, 2000, Grieveson was arrested by the Marion County (Indiana) Sheriff's Department for theft and, upon discovery of the Bartholomew County arrest warrant, was transferred by the Sheriff to Bartholomew County on February 25, 2000. That same day the arrest warrants were served on Grieveson who was released and ordered to appear on February 28, 2000, which he did. On February 28, a trial on all of Grieveson's Bartholomew County cases was set for May 22, 2000. It was while awaiting this trial that INS discovered Grieveson in the Bartholomew County Jail and interviewed him. In addition, the Government asserts that evidence exists that shows, based upon a search of Grieveson's fingerprints, that he had been arrested and jailed on October 27, 1999, in the Marion County Jail for public intoxication where he had used a different name and a different date of birth.

## Discussion

### A. Section 1326

Section 1326 makes it illegal for any alien who "(1) has been ... deported ..., and thereafter (2) ... is at any time found in [ ] the United States, unless ... (A) ... prior to his reembarkation at a place outside the United States ..., the Attorney General has expressly consented to such alien's reapplying for admission...."

[Such person] shall be fined under Title 18, or imprisoned not more than 2 years, or both." 8 U.S.C. § 1326(a). Eight Courts of Appeals have addressed whether this Section requires any mens rea element, of which the Seventh Circuit is alone in finding that § 1326 includes an implied mental state requirement. *See United States v. Barrera–Paniangua,* No. 98–CR–648, 2000 WL 246241, at * 1 & n. 1 (N.D.Ill. Feb.24, 2000) (noting that the Seventh Circuit is the only circuit of the eight who have addressed the issue of a mental state requirement to have found such a requirement exists, and collecting cases of other circuits); *see also United States v. Anton,* 683 F.2d 1011, 1017 (7th Cir.1982) ("Anton I") (holding that there is some mental state requirement for the third material element of § 1326).

In *Anton I,* the defendant introduced facts into evidence indicating that he reasonably believed he had obtained the necessary permission prior to his reentry into the United States. *See id.* at 1013. He testified that he "had a series of dealings with officials of the American Consulate as well as contacts with the INS office in Chicago and with the office of the Attorney General; and, as a result of those events, he obtained a new visa with which he gained readmission to the United States through a normal INS checkpoint." *Id.* However, the district court instructed the jury in a manner that precluded the defendant from arguing his "reasonable belief" defense. *See id.* On appeal, the Seventh Circuit analyzed competing principles of statutory construction and common-law principles and held that the punitive nature of § 1326, the lack of public harm imposed by a violation of the Section, and the fact that strict liability is the exception rather than the rule in principles of Anglo–American jurisprudence necessitated that some mental state requirement exist for the third element of the offense. *See id.* at 1017.[1] This requirement could be satis-

fied by allowing the defendant, upon proof by the government of the Section's three elements, to establish a "limited mistake of law defense" which the opinion described as proof that "the defendant reasonably believed that he had consent of the Attorney General to reenter the United States...." *Id.* at 1018. The Seventh Circuit opined that this mental state requirement *"will not significantly affect* the government's burden in a prosecution under [Section 1326]" and would be available only in the *"atypical case* in which the defendant offers evidence regarding his reasonable belief." *Id.* (emphasis added).

The Seventh Circuit revisited the mens rea requirement of Section 1326 in a later case, again involving Mr. Anton; apparently, Mr. Anton was deported no fewer than four times, with the latest leading to the second opinion. *See United States v. Anton,* 888 F.2d 53, 54 (7th Cir.1989) ("Anton II"). In this second case, Mr. Anton argued that the district court had erred by excluding evidence concerning the amnesty provisions of the Immigration Reform and Control Act of 1986, Pub.L. No. 99–603, 100 Stat. 3359 (1986), which ruling, Mr. Anton contended, deprived him of the opportunity to present evidence which could have demonstrated his reasonable belief that he may have been eligible for amnesty. *See id.* at 54, 55. The Seventh Circuit first affirmed the fact that Section 1326 requires the government to prove three elements: " '(1) that the accused is an alien; (2) that he previously was arrested and deported according to law; and (3) that he subsequently was found unlawfully in the United States.' " *Anton II,* 888 F.2d at 55 (quoting *Anton I,* 683 F.2d at 1016) (footnote omitted). The Court explained the holding of *Anton I* to provide that "even if the government could establish [the three elements of a Section 1326 defense], a defendant might nonetheless successfully challenge his arrest by proving that he *'reasonably believed that he*

---

**1.** *Anton I* was circulated among all the judges of the Seventh Circuit and a majority of the

judges did not favor a rehearing en banc. *See id.*

*had the consent of the Attorney General to reenter the United States.'"* Anton II, 888 F.2d at 55 (quoting *Anton I*, 683 F.2d at 1018) (emphasis added). While the Court denied Anton's appeal on the merits, its approval of jury instructions appears to have validated Anton's underlying defense that a reasonable belief that he was eligible for amnesty would have provided a defense to the offense charged. *See id.* at 55.

Later opinions in this circuit have reiterated the elements of an offense under § 1326 to include: that the accused is an alien; that he previously was arrested and deported according to law; and that he was subsequently found in the United States without the proper permission. *See United States v. Gomez–Orozco,* 188 F.3d 422, 425 (7th Cir.1999); *Anton II,* 888 F.2d at 55; *Barrera–Paniangua,* 2000 WL 246241, at *2–3; *United States v. Anderson,* 64 F.Supp.2d 870, 874 n. 1 (S.D.Ind.1999), *aff'd,* 221 F.3d 1339, 2000 WL 868592 (7th Cir. Jun.27, 2000) (Table Text). Our review of the caselaw within this circuit discloses but a single opinion, from the Northern District of Illinois in *Barrera–Paniangua,* dealing explicitly with the issue of the mental state requirement subsequent to *Anton I* and *Anton II*. *Barrera–Paniangua* concluded that the above-quoted language in *Anton II*, in light of the elements in *Gomez–Orozco,* 188 F.3d at 425, establishes that under Seventh Circuit interpretations the mental state requirement can be countered by a limited mistake of law defense, whereby the government would prove intent only after a defendant raised his claim of an honest but unknowing entrance into the country. *Barrera–Paniangua,* 2000 WL 246241, at *3. We have no reason to quarrel with the Northern District of Illinois' assessment of the state of law surrounding § 1326, at least within the Seventh Circuit

### B. Defendant's Proposed Jury Instructions

Turning to the case at bar, Grieveson has submitted three proposed jury instruc-

tions, of which numbers one and three are contested by the Government. Proposed instruction number one defines the essential elements of the charged offense to be: (1) that Defendant was an alien at the time alleged in the indictment; (2) that Defendant was deported from the United States; (3) that thereafter Defendant was found to be in the United States without the permission of the Attorney General of the United States; and (4) that Defendant knew he was not entitled to be present in the United States. *See* Defendant's Proposed Jury Instruction No. 1. There is no essential disagreement between the parties as to the first three elements. However, the Defendant's proposed fourth element is objected to by the government because it would require proof that the defendant had the "specific intent" to reenter the United States unlawfully, a requirement that the Government contends is not found in 8 U.S.C. § 1326(a).

As explicated above, we are of the view that Grieveson's proposed jury instruction number one does not reflect the law in this circuit. Defendant contends that his reading of the statute is based on the Seventh Circuit's ruling in *Anton I* and the FEDERAL JUDICIAL CENTER, PATTERN CRIMINAL JURY INSTRUCTIONS, No. 111 (1988) (instruction for 8 U.S.C. § 1326), which includes a fourth element, acknowledging in the commentary that the Seventh Circuit is the only circuit to require the government to prove some mental state. He further cites the holding in *Anton II*, in which the Seventh Circuit approved a jury instruction requiring the government to prove that the defendant "'was willfully [sic] in the United States unlawfully' ... [and thus] fully comport[s] with ... *Anton I.*" *Anton II,* 888 F.2d at 55. Neither *Anton I* nor *Anton II* can reasonably be interpreted to impose an additional element into the text of Section 1326. Despite the Seventh Circuit's imposition of a mens rea requirement on Section 1326, it clearly has not expanded the essential legal elements of

the crime. We thus sustain the Government's objection to Defendant's Tendered Instruction Number One and decline to give it to the jury.

Proposed Instruction Number Three lays out Grieveson's theory that he believed that he was entitled, or required, to be in the United States to respond to his pending Bartholomew County court matters and such a belief provides a complete defense to the charged offense. *See* Proposed Jury Instruction No. 3. As the holdings in *Anton I* and *Anton II* make clear, to the extent an affirmative defense is available, it is limited to there being a reasonable belief that the Attorney General had given permission for the defendant to reenter.

In *Anton I*, the defendant was allowed to pursue the affirmative defense because the facts established that by virtue of the nature and extent of his repeated dealings with several federal agencies the defendant could reasonably have believed that he had obtained the permission of the Attorney General to reenter the United States. Likewise, in *Anton II*, the defendant was allowed to submit evidence relating to the amnesty provision in the U.S. Immigration Code, on the grounds that it could have led to a reasonable belief that the Attorney General, or her federal designee, had granted defendant the authority to reenter the United States. In contrast, Grieveson has provided us with no evidence that he had any dealings with the federal government on the basis of which he could reasonably have believed that the Attorney General, or her designee, had agreed to permit him reentry into the United States.

Grieveson admitted as much at the hearing. Defense counsel explained that he was not contending that Grieveson had any contacts of any kind with a federal official that yielded either express or implied permission from the Attorney General to reenter the country. Rather, defense counsel defines the affirmative defense far more broadly, contending that the defendant should be permitted to present evidence that he reasonably believed that the orders of a judge of the Indiana Superior Court for Bartholomew County entitled him, or required him, to reenter the United States. Reading Section 1326 so broadly as to require proof either of the specific intent to enter illegally or a reasonable belief defense unrelated to acquiring or achieving the Attorney General's permission to reenter does not comport either with the text of Section 1326, the Seventh Circuit's holdings in *Anton I* or *Anton II*, or its later opinion in *Gomez–Orozco*. Grieveson's position would allow a defendant to avoid conviction under this Section on any reasonable basis he might invoke, a position clearly beyond the statutory language and beyond the limited nature of the defense permitted by *Anton I*, a defense, according to the Seventh Circuit, which would "not significantly affect the government's burden in a prosecution under this section" and would be available "only in [an] atypical case." *Anton I*, 683 F.2d at 1018. The defense argument, if permitted, could be applied as easily in a case where the defendant reentered the United States to be married, to attend a funeral, to consult with medical caregivers or any other such reasonable purpose. Those "reasonable purposes" can be made known to the Attorney General or her designee in an effort to obtain her approval for reentry. They should not become the exception that overcomes the rule by virtue of a judicially permitted affirmative defense. Such excursions into the mind of the defendant exceed both the intention of Congress and the holdings of the Seventh Circuit.[2]

Interpretation of the Seventh Circuit's mens rea requirement is made somewhat more difficult by conflicting language found in the *Anton* decisions and by the

---

**2.** Congress has specifically empowered the Attorney General with the authority to determine whether a deported alien can reenter the United States. *See* 8 U.S.C. § 1326(a)(2)(A).

fact that the Seventh Circuit has not revisited these issues since 1989. However, given the text of the statute itself, coupled with the fact that the Seventh Circuit's mens rea requirement has not been adopted by any other circuit to address it and the limited nature of the holdings in both *Anton I* and *Anton II*, we are confident that we have accurately applied the controlling legal principles to the instant case.

### C. Motion in Limine

Turning to the motion in limine, Grieveson has moved to exclude evidence of "any of defendant's prior arrests, convictions, probation or parole violations, or any other facts related to defendant's criminal history," describing the evidence as improper and prejudicial, under F.R.E. 403. Motion in Limine at 1. In response, the Government stated its intent "to introduce evidence that Grieveson had been arrested on a local charge of driving while intoxicated offense on May 10, 2000, and not arrested by INS initially, [to prove that] Grieveson was found within the United States by INS which began this current investigation." Gov.'s Resp. at 6. The government further stated that it does not intend to submit in its case-in-chief additional evidence of the nature to which Grieveson objects. At the hearing, Grieveson agreed to stipulate that he was found in Bartholomew County, Indiana, in the United States, which stipulation the Government accepted, obviating the necessity of introducing the objectionable evidence as a part of the Government's case-in-chief.[3] The Defense Motion in Limine is therefore *DENIED AS MOOT*.

### D. Motion to Strike Surplusage in the Indictment

Finally, we address Defendant's motion to strike language from the indictment that references the underlying felony that led to his original deportation. *See* Motion to Strike Surplusage from Indictment at 1. In its written response and again at the hearing, the Government agreed to redact the offending language from the Superseding indictment should the indictment be read to a jury. However, the Government seeks to preserve its position with respect to any sentencing enhancement that may be available under 8 U.S.C. § 1326(b) based on the prior conviction referenced in the Superseding Indictment. We therefore *GRANT* Defendant's Motion to Strike the surplusage from the indictment for the purposes of presenting the indictment to a jury; however, the language suffices as notice of the charge to the defendant and is thus available for consideration by the Court at sentencing in the event of a conviction, pursuant to 8 U.S.C. § 1326(b).

### Conclusion

To summarize, we hold that the offense of illegal reentry by a deported alien, as charged under 8 U.S.C. § 1326, does not include a specific intent element, and that to the extent it gives rise to an affirmative defense, the defense is limited to a showing of a reasonable belief on the part of the defendant that he had received the prior permission of the Attorney General to reenter the United States. We further *DENY AS MOOT* Defendant's Motion in Limine and *GRANT* Defendant's Motion to Strike Surplusage in the Superseding Indictment.

---

**3.** The Government, of course, is entitled to such facts into evidence on cross-examination.